### San Antonio & Aransas Pass Railway Company v. Hortense E. Waller et al.

#### Decided October 30, 1901.

**1.—Railroads—Defect in Track—Issue of Negligence—Evidence.**

In an action by a railroad brakeman for injuries caused by a fall from the pilot of an engine, evidence that the outer rail of a switch track where the fall occurred was too low, causing it to dip, and that the space between the ends of the rails of the switch and the main track was three or four inches, so as to cause an engine moving over it to drop, was sufficient to justify submitting to the jury the question whether or not the brakeman was jarred off the pilot by reason of such defects in the track.

**·2.—Same—Master and Servant—Assumed Risks.**

One who enters the service of a railroad company assumes the risks ordinarily incident to his work, but does not assume any risk arising by reason of the company's negligence, unless he knows it, or in the ordinary discharge of his duty must necessarily have acquired such knowledge.

**:3.—Same—Expert Evidence—Condition of Track.**

A witness who was an expert as to the condition of railroad tracks and who testified that at the place of plaintiff's injury there was a space from three to four inches between the ends of the rails, where there should have been but one inch, was properly permitted to state that the rails of the switch track there had too much expansion at the point on the head block of the switch.

**·4.—Same—Contributory Negligence—Evidence.**

In an action for injury to a brakeman caused by his falling from the pilot of an engine it was admissible, upon the issue of contributory negligence, to show that the pilot of the engine was the usual place for a brakeman to ride while engaged in switching cars.

**5.—Charge—Burden of Proof.**

A charge that the burden of proof is upon plaintiff to establish his case by a preponderance of evidence, but the jury are the sole judges of the credibility of the witnesses and the weight to be attached to their testimony, is not objectionable on the ground that the last clause is a qualification of the burden of proof.

**·6.—Railroads—Defective Track—Contributory Negligence.**

A railway brakeman who did not know of the defective condition of a switch track by reason of which he was injured was not chargeable with contributory negligence because he might have gained such knowledge by inspecting its condition.

**·7.—Action for Death—Measure of Damages.**

Where the action was to recover for negligent injuries causing death the

court correctly charged that the measure of damages would be such a sum of money as, if paid now, would fairly compensate plaintiffs for the pecuniary loss,. if any, sustained by them in the death.

**8.—Same—Excessive Verdict.**

Where deceased was an able-bodied railway brakeman, 29 years old, earning $70 to $75 per month, all of which, except about $7 per month, he contributed to the support of his family, a verdict of $20,000 in favor of his wife and child. was held excessive, and a remittitur of $4000 required.

Appeal from Bexar. Tried below before Hon. S. J. Brooks.

*Houston Bros.* and *R. J. Boyle,* for appellant.

*Price, Green & Green* and *Lewy & Sehorn,* for appellees.

NEILL, Associate Justice.—This suit was brought by Hortense E.. and Gladys M. Waller, wife and child, and William A. Waller and Mary V. Waller, mother and father of A. R. Waller, deceased, against the rail-- road company to recover damages occasioned by his death, alleged to· have been caused by the negligence of appellant.

The trial of the cause resulted in a judgment in favor of appellees, Hortense and Gladys Waller, for $20,000 ($10,000 to each), and in favor of appellant company as against deceased's father and mother. From this judgment the railroad company has appealed.

*Conclusions of Fact.*—On the 31st day of July, 1899, A. R. Waller, the husband of Hortense and father of Gladys, was in the employment· of appellant company as a brakeman, and in the pursuance of his employment it became his duty at Kennedy, a station on appellant's road, to assist an engineer operating one of appellant's engines in moving a car from a side track, known as the stock track, to the main track of the railroad. In the discharge of this duty he threw the switch connecting· the main track with the stock track, so that the engine might pass thereon and be coupled to a car to be moved to the main track. After· the switch was thrown, and the engine was passing, it going from the· main track on to the stock track, Waller, in pursuance of his duty,. stepped upon the pilot blade of the engine for the purpose of riding thereon to, and coupling it to, the car desired to be·moved. Immediately thereafter, in consequence of defects in the switch and track existing by reason of the negligence of appellant, and which were unknown to Waller, the engine was suddenly jolted and jarred so as to cause him to· lose his footing and slip and fall from the pilot in front of the engine, whereby he was drawn under and dragged by said engine, and thereby so injured as to cause his death.

The defects in the switch and stock track, the existence of which were· caused by the negligence of appellant, as aforesaid, which caused the jolt and jar of the engine, which threw or caused deceased to fall from the· pilot, were as follows: (1) The end of the rails of the stock track and

those across the switch block were improperly aligned, so they did not come together straight—one slide rail on the right hand side of the switch projecting about half an inch beyond the line of the stationary rail, which caused what is termed a "lip" on the slide rail, i. e., the wheels of the cars in passing over the switch by striking the projecting end of the slide rail wore the ball (the top of the rail) off about half an inch and extending back about six inches. This wearing off of the rail is what is known as a "lip." (2) The outer rail of the stock track was too low, causing it to dip; and (3) the space between the ends of the rails was too much, it being three or four inches, and was such as to cause an engine moving over it to drop.

The pilot blade of an engine is, according to the testimony in this case, the usual and proper place for a switchhman to ride while in the performance of such duties as were required of Waller at the time he undertook to ride thereon, and would be a perfectly safe place for one exercising ordinary care, if the switch and track were properly constructed and maintained free from defects. Waller, at the time he lost his footing and slipped from the pilot blade, was in the exercise of ordinary care, and guilty of no negligence proximately contributing to his death. But his death was caused by said negligence of appellant in permitting the defects in its switch and track, as before stated.

At the time of his death Waller was 29 years old. Prior thereto he was an ablebodied man, working as a brakeman for appellant company, and his average earnings were between $70 and $75 per month. His individual expenses amounted to about six or seven dollars per month. With the exception of this, he turned all of his earnings over to his wife, all of which it took to support her and his child, and keep up their home. Hortense was 23 years old last May, and Gladys, deceased's daughter, was 4 years old in March.

*Conclusions of Law.*—1. The court did not err in submitting in its charge the question as to whether the deceased was jolted or jarred off the pilot of the engine. That such a jolt or jar occurred by reason of the defects in the switch and side track, which caused deceased to lose his footing and fall from the pilot, was specifically alleged and abundantly established by the evidence. The testimony is overwhelmingly to the effect that such defects would necessarily jolt and jar an engine in passing over the part of the track affected by them. It is undenied that deceased lost his footing and fell there. His fall was the effect of some cause, and it being shown that the engine could not pass over without a jolt or jar, it was a legitimate inquiry as to whether his fall was the effect caused by such jolt or jar.

2. In cases of this character we regard it as settled law in this State that "one who enters the service of a railroad company assumes the risks ordinarily incident to his work; but he does not assume any risk arising by reason of the company's negligence, unless he knows it, or in the ordinary discharge of his duty must necessarily have acquired such knowl-

edge." Railway v. Hanning, 91 Texas, 351; Railway v. Bingle, 91 Texas, 347. Therefore the court did not err in giving the last clause of the paragraph of the charge quoted, which is complained of in appellant's second assignment. We have never understood any new or different principle of law from what has always obtained in this State to be announced in Railway v. Hanning. There is an obvious distinction between it and the class of cases claimed by counsel for appellant to be in conflict with the well established principle it asserts.

3. The testimony of the witness Burridge, complained of in the third assignment, is not obnoxious to the objection urged. Railway v. Wesch, 85 Texas, 593. The witnesses simply stated facts regarding the accident as they appeared to her, and all the undisputed evidence shows the matters testified to by her were true.

4. The witness Grady having qualified as an expert, in relation to the condition of the track when the accident occurred, testified as follows: "In the first place I found the left hand rails leading onto the stock track had too much expansion at the joint on the head block of the switch." This was objected to upon the ground that, as an expert, the witness could not give an opinion as to whether the rails had too much expansion. After giving the portion of the testimony objected to, he further testified: "There was a space from three to four inches between the ends of the rails, where there should have been but one inch. The space * * * was such as to cause an engine moving over it to drop, and this would produce a jolt or jar of the engine." The testimony complained of, taken in connection with that just quoted, shows the witness's opinion, based upon his experience as a "trackman," and personal observation as to the condition of the track, was that the track was not reasonably safe because there was too much expansion, etc. We do not believe the testimony objectionable. Railway v. Thompson, 75 Texas, 503; Railway v. Johnston, 78 Texas, 536.

5. Upon the issue of contributory negligence it was proper to show that deceased was pursuing the usual and customary method in doing the work when injured. Railway v. Beam, 50 S. W. Rep., 411. Therefore, the court did not err in permitting the witness Nass to testify that the usual and customary place for a brakeman to ride when going onto a switch to couple a car is the pilot of the engine.

6. The second paragraph of the charge is: "The burden of proof is upon Hortense E. Waller and Gladys M. Waller to establish their cause by a preponderance of evidence; but you are the sole judges of the credibility of the witnesses and the weight to be attached to their testimony." The last clause is objected to upon the ground that it is a qualification of the burden of proof. We do not think the objection tenable. Railway v. Williams, 52 S. W. Rep., 808, 2 Texas Ct. Rep., 421.

7. The court charged the jury, in the event they should find for appellees, the measure of damages would be such a sum of money as, if paid now, would fairly compensate them for the pecuniary loss, if any, sustained by them in the death of A. R. Waller. The charge correctly

gives the measure of damages (Railway v. Morrow, 56 Southwestern Reporter, 745; Traction Company v. White, 60 Southwestern Reporter, 323), and the court did not err in giving it, nor in refusing the special charge requested by appellant.

8. Our conclusions of facts dispose of all the assignments which complain of the insufficiency of the evidence to support the verdict save the one which complains that it is excessive. However, before passing upon the question of excessiveness in the verdict, we deem it proper to say that while the evidence shows deceased in pursuance of his employment passed over the defective switch every day, it does not follow that he knew or must have necessarily known of defects in it and the stock track which caused his death. The defects existed in connection with the stock track; none were shown in the other track connected with the switch. The deceased did not use the switch in connection with the stock track every day, nor did the company. Its own witness, Mr. Lohring, testified, "We used the stock switch once or twice a month— whenever there was any stock to load." It may be then, for aught it appears from the evidence, that deceased never in the course of his employment had occasion to examine or use the switch in connection with the stock track. He had the right to assume that the railroad had exercised ordinary care to maintain it in a reasonably safe condition, and that having exercised such care it was reasonably safe for him to do his work therewith in the usual and ordinary way. If he did not know of the defects, the company can not escape the consequences of its negligence by saying that he could have gained such knowledge by inspecting its condition. Sanner v. Railway, 17 Texas Civ. App., 337. Railroads would be much hindered in the conduct of their business if their servants were required, before undertaking the labor of their employment, to see that their employers had not failed in their duty to use ordinary care to furnish their servants reasonably safe places and appliances with which to do their work.

9. Now, as to the excessiveness of the verdict: This court is, and always has been since its organization, loath to disturb the findings of a jury on the quantum of damages in cases of this character, and has never required a remittitur in a case where it was thought the evidence was reasonably sufficient to sustain the verdict. We have always acted on the principle that the amount of damages is primarily a question for the jury, and that as long as they keep within their province a court has no right to invade it. But when damages awarded are unprecedented in amount and can not, in the light of the evidence, be measured by the rule made by the law, but would require one long enough to reach beyond the domain of the jury, we deem it and have deemed it our duty, under the law, to require such a remittitur as will place the verdict within the boundaries of the jury's province.

After a most careful consideration of the evidence in this case and of all the elements of damages that can legitimately be brought into a verdict, we are constrained to the opinion that, when tested by the rule es-

tablished by law, the evidence is not reasonably sufficient to show the amount of damages assessed, and that to the extent of at least $4000 the jury clearly went beyond the law and evidence in their finding.   Therefore, there being no other error requiring its reversal, the judgment will be affirmed if the appellees will within five days enter a remittitur of $4000 ($2000 for each) ; otherwise it will be reversed and the cause remanded.

<em>Affirmed upon remittitur.</em>

Writ of error refused.