GULF, C. & S. F. RY. CO. v. KENNEDY
et al.

(Court of Civil Appeals of Texas. Galveston. June 19, 1911. Rehearing Denied Oct. 5, 1911.)

1. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT — ACTIONS — EVIDENCE — JURY QUESTION.

In an action against a railroad company for the death of a servant, killed under a car, *held*, that whether a sensible or experienced man would have worked under the car under the same circumstances was, under the evidence, a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**2. Trial (§ 194*)—Injuries to Servant—Actions—Instructions.**

Where a servant of a railroad company was killed by the falling of a car which was raised upon jacks, because of the breaking of a timber upon which one of the jacks rested, and it was an issuable fact whether the servant was negligent in using that timber, a charge that, if the falling of the car was caused by the breaking of the timber, there could be no recovery, was properly refused, being in effect a peremptory instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–441, 446–454; Dec. Dig. § 194.*]

**3. Master and Servant (§ 233*)—Injuries to Servant—Appliances.**

Where it was customary in a railroad repair yard to raise cars by jacks, and though timbers were needed for rests the railroad company supplied no particular ones, but allowed its servants to use anything in the yard apparently sound and suitable, the use of any apparently sound timber by a servant was not negligence; the company having supplied such timber for that purpose.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 233.*]

**4. Master and Servant (§ 294*)—Injury to Servant — Actions — Instructions — Applicability to Evidence.**

One of two car repairers, who together raised a car and were repairing a defect underneath, was injured. The two worked together in all matters, save that the uninjured repairer selected a timber upon which to rest the jack used for raising the car. Though this timber broke, it was apparently sound in all respects. *Held*, that a charge as to the rule of fellow servant's negligence was inapplicable to the evidence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 294.*]

**5. Master and Servant (§ 295*)—Injuries to Servant—Assumption of Risk.**

Under the direct provisions of the act of 1905 (Acts 29th Leg. c. 163), an employé of a railroad company does not assume the risk of a known danger, where a person of ordinary care would have continued in the service with knowledge of the defect and danger, and hence, where an employé was killed as the result of an apparent risk, and the evidence was conflicting whether an ordinarily prudent man would have continued at work, knowing the risk, that qualification was properly submitted in the charge upon assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 295.*]

**6. Trial (§ 260*) — Instructions — Instructions Covered by Others.**

A requested charge covered by the charge as given is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**7. Pleading (§ 244*)—Amendment of Pleadings—Necessity.**

Where special exceptions are sustained to a petition, those parts affected are eliminated; but plaintiff need not amend if the remainder of the petition states a cause of action.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 244.*]

**8. Appeal and Error (§ 236*)—Presentation of Grounds of Review in Court Below—Necessity.**

Where special exceptions to a petition were sustained, and the plaintiff failed to amend, defendant cannot, on appeal, object to such failure, not having moved below to require plaintiff to amend his petition so as to conform to the court's ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1384, 1385; Dec. Dig. § 236.*]

**9. Master and Servant (§ 270*)—Injury to Servant — Customary Equipment — Evidence.**

In an action against a railroad company for the death of a servant, killed while repairing a car which had been raised on jacks, evidence as to the appliances used by other railroads in supporting cars set up for repairs is admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 921; Dec. Dig. § 270.*]

**10. Appeal and Error (§ 1058*)—Review—Harmless Error.**

The exclusion of evidence afterwards admitted is harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4200–4206; Dec. Dig. § 1058.*]

Appeal from District Court, Shelby County; James I. Perkins, Judge.

Action by Mrs. Eva Kennedy and others against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Terry, Cavin & Mills and E. J. Duff, for appellant. Tom C. Davis, A. G. Greenwood, and Thos. B. Greenwood, for appellees.

REESE, J. This is an action by the widow and children of John Kennedy against the Gulf, Colorado & Santa Fé Railway Company to recover damages for the death of the said John Kennedy, alleged to have been caused by the negligence of defendant. A trial with a jury resulted in a verdict and judgment for plaintiffs for $15,000. Defendant's motion for a new trial was overruled, and it prosecutes this appeal.

It is alleged in the petition that John Kennedy was a car repairer in the service of appellant in its yards at Silsbee, and that on the 18th day of February, 1907, while engaged at work, under the orders of the foreman of appellant, in the repair of a loaded car upon its repair track, and while under the car, where he was required to be in the prosecution of the work, the car fell, crushing Kennedy and killing him. The car was at the time supported at one end by the trucks, and, at the end at which Kennedy and one Gipson were working, by two heavy hydraulic jacks, called "Norton jacks," one on each side of the car. The piece of timber upon which one of these jacks rested gave way, and the car fell. It is charged that the appellant was negligent in failing to provide suitable appliances for the work, especially in failing to furnish suitable supports for the car after it was jacked up, and suitable timbers upon which to rest the jacks. Defendant pleaded general demurrer, general denial, contributory negligence, and assumed risk, specially setting up the facts upon

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

which such defenses were based. It also urged several exceptions to certain allegations of the petition, some of which were sustained and some overruled.

The evidence is sufficient to authorize the following conclusions of fact:

Appellees are the widow and children of the deceased, John Kennedy, and the evidence fully authorizes the amount of the verdict, if appellant is liable. No objection is made to the amount awarded.

On September 17, 1907, John Kennedy, who was an experienced car repairer, and who had been in the employ of appellant for some time, and J. C. Gipson, were directed by Turrentine, the foreman in charge of such work, to make some repairs upon a box car loaded with cross-ties, on appellant's repair track at Silsbee. The repairs required were the putting in of an end sill and some heavy draft timbers under the cars, and to do the work it was necessary to raise the car and to remove the trucks at that end of the car. No directions were given them by Turrentine as to how to do the work, only to take down the broken material, the end sill and different timbers, and get the car ready to put in the new timbers. Under these orders, Kennedy and Gipson, on the morning of September 17th, went down to the car, got some jacks, and jacked the car up, using two Norton jacks, which are very large heavy jacks; the head of the jack being four or five inches across, and the base about six or eight inches. While engaged in jacking up the car, the piece of timber placed under the foot of one of the jacks, and which had been gotten by Kennedy, broke, and Gipson went off and got another piece from the rip track near the carpenter's shop. This piece was of oak, about five feet long, and six by eight inches in size. One end of this piece of timber was placed on a cross-tie, extending out at right angles from the rail, and about a foot and a half or two feet from the end of the tie a piece of board one foot and one inch thick was placed under the timber. The jack was placed on this piece of timber just about the end of the cross-tie extending somewhat over the end of the tie. While jacking the car up with the two Norton jacks thus arranged, which was done by Kennedy and Gipson, they noticed that the car was heavily loaded, and, as Gipson says, "a little tricky," so they got two step jacks and one twenty-four inch jack (smaller than the Norton jacks) and placed them under the car and kept all of the jacks tight under the car until they got it as high as they wanted it. They then rolled the trucks out and took off the end sill and material and broken bolts. They then left the car in this condition. On the afternoon of September 18th, Kennedy and Gipson were ordered by Turrentine to go back to the car and finish putting in the draft timbers, and other work that was to be done. When they got to the car, they found that the end sill had been put in, and that the trucks had been rolled back under the car, and two six-inch jacks set on top of the trucks and jacked up against the transom of the car. The two step jacks and the 24-inch jacks which they had left under the car had been removed. The two Norton jacks were still under it. They got the necessary timbers to make the repairs and then unscrewed the two six-inch jacks and rolled the trucks out from under the car. Gipson testified that it was necessary to have the trucks out from under the car to do the work they were required to do. This left the end of the car under which they were working supported alone by the two Norton jacks, placed by Kennedy and Gipson the day before. The trucks under the other end of the car were blocked to keep the car from moving. While they were both under the car thus supported, engaged in the work, Gipson was required to go for some lug-bolts to put on the draft timbers. Just as he started to get out from under the car, he heard a noise like something breaking. Before he got entirely out, the car fell, killing Kennedy. When the car was raised to get Kennedy out, it was found that the piece of timber referred to, which had been placed under the foot of one of the Norton jacks, had broken just where the jack had rested on it. This caused the fall of the car. The end of the tie upon which the timber rested was about flush with the ground, or nearly so. There may have been a slight open space between the timber and the ground, at the end of the tie. The piece of timber had been gotten by Gipson near by where they were working. It was apparently sound; but it was shown that it broke in such a way, without splinters, as to indicate that it was, in fact, not sound.

In using jacks to jack up cars, it is necessary in appellant's yards at Silsbee to have wooden supports under the foot of the jacks, and it is customary in some railroad repair yards to have specially prepared blocks or pieces of timber for that purpose. There were no such appliances furnished workmen by appellant in its yards at Silsbee, but they were required to pick up such pieces of timber as they might find in the yard for that purpose. The piece of timber under the jack in question had been picked up by Gipson in this way, and was apparently sufficient for the purpose. It was customary and usual with railroads to provide supports to go under the cars to hold them up while men were working under them; the jacks being used only to raise the cars. Appellant used in its yards at Cleburne, where Kennedy had been working until about two weeks before the accident, appliances called "horses" or "trestles" or "tripods," being a sort of bench made of heavy strong timbers, one piece about four feet long, supported by two legs at one end, and one at the other.

In doing, at the Cleburne yards of appellant, such work as Kennedy and Gipson were engaged in, it was customary to use these tripods to support the cars after they were jacked up. Other roads used other kinds of supports. In doing such work at the Silsbee yards it was frequently, if not generally, done as Kennedy and Gipson were doing it, that is, to use only jacks to support the cars, while working under them, and this was so generally done as to authorize the conclusion that it was done with the knowledge and acquiescence of the foreman. The evidence was conflicting as to how many of these tripods were kept in the yards at Silsbee. Morgan, who had been working in the yard repairing cars about two weeks before Kennedy was killed, doing the same kind of work, testified that he had never seen any. Gipson testified that he had never seen any trestles or tripods in use by any car repairer during the entire length of his stay in the yard at Silsbee up to the time Kennedy was killed. Other witnesses testified that there were in the yards such trestles—as to how many is left in doubt. Our conclusion is that, if there were such trestles provided, there were not more than two or three, that it was not customary to use them, but to rely upon jacks alone to support the car, and that to have used such trestles in every case where it was necessary to raise loaded cars, in order to go under them to make repairs, would have required several times as many of such trestles as were shown by any witness to have been provided. We find that in fact nothing was furnished Kennedy and Gipson to support this car, except the jacks and for supports for the jacks to rest upon such pieces of timber as they might pick up in the yard. The evidence justifies the further conclusion, at which the jury evidently arrived, that appellant was negligent in failing to furnish Kennedy with proper timbers to support the jacks, and to put under the cars, and in the manner in which such work, with the knowledge and acquiescence of the foreman, was usually done at Silsbee, and that the death of Kennedy was the proximate consequence of such negligence, and further that Kennedy was not guilty of negligence proximately causing or contributing to his death, and that in continuing in the work with such knowledge, if any, as he had as to the danger of doing the work as he was doing it, which was the manner in which it was customarily done, at Silsbee, he acted as a man of ordinary prudence would have acted and therefore did not assume the risk arising therefrom, under the provisions of the act of 1905 (chapter 163, Acts 29th Legislature, p. 386).

The trial court in a carefully prepared charge presented the issues, as made by the pleadings and evidence, of negligence on the part of appellant, and contributory negligence on the part of Kennedy, and also upon the issue of assumed risk, applying thereto the provisions of the act of 1905, above referred to. Several charges requested by appellant were also given.

Only two or three of the numerous assignments or error escape objection by appellees. These objections relate, for the most part, to the form of the assignments. We do not think that any of them, except that to the twenty-fourth assignment, hereafter referred to, are such as to require us to disregard the assignments. We take occasion to say, however, that it is always better and safer to copy literally in the brief each assignment of error, as is required by rule 29 (47 S. W. v), and to say that the court erred in the particular matter referred to, instead of saying that the assignment relates to such action. The departure from the literal requirement of the rules does not make for brevity, and is not an improvement upon such requirement, so far as we can see.

[1] Appellant requested the court to instruct the jury that the uncontradicted evidence showed that no sensible or experienced man would have undertaken to do the work under the car braced and held up as it was by only two Norton jacks, therefore Kennedy assumed the risk of doing so, and plaintiffs could not recover. The refusal to give this charge is presented by the first assignment of error. The trial court in presenting the issue of assumed risk did so with the qualification as to whether a man of ordinary prudence would have continued in the work of repairing the car, as Kennedy did, with a knowledge of the conditions and the danger. Appellant proved by the testimony of several witnesses that no man of ordinary prudence would have done so, and this testimony was not contradicted by the testimony of any witness. It is upon this ground that appellant bases the charge. But there was evidence which, if true, tended to show that workmen all over the yard were engaged in doing such work under substantially the same conditions. Kennedy himself was an experienced workman, of such exceptional proficiency that he had been recommended by his foreman for promotion. He and Gipson, after jacking up and supporting the car, as was customarily done in this yard according to the testimony of some of the witnesses, were under the car at work. These facts tended to rebut the testimony of the witnesses that no "sensible or experienced person" would have undertaken to do the work in this way. It was shown that though it was usual and customary thus to support cars, while at work under them, no accidental falling of such cars, on account thereof, had ever happened in the Silsbee yards. No witness, it is true, testified expressly that he had ever seen a loaded car supported by only two jacks while men were working under it; but it was shown that such cars were supported just like this car was. The supports under this car were two Norton jacks; the only two of such jacks in the

yards, and it was shown that they were exceptionally strong and substantial. Notwithstanding the testimony of the witnesses referred to, uncontradicted by the direct testimony of any other witness, the facts detailed made an issue for the jury as to whether a "sensible or experienced man" or a man of ordinary prudence would have done as Kennedy did. It was said by the court in Railway Co. v. Foth, 45 Tex. Civ. App. 275, 100 S. W. 171, approved by the Supreme Court in same case (101 Tex. 143, 105 S. W. 322): "When it was proved that 75 of 80 persons were using engines on appellant's railroad equipped with water glasses, guarded as was the one that exploded and hurt appellee, it would seem that that fact alone would show that persons of ordinary care would use such engines, and justified the jury in eliminating the issue of assumed risk." G.; C. & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227; Railway Co. v. Engelhorn, 24 Tex. Civ. App. 324, 62 S. W. 562; Railway Co. v. Waller, 27 Tex. Civ. App. 44, 65 S. W. 212. There was no error in refusing the requested charge. The issue was one for the jury, under all of the evidence, whether Kennedy assumed the risk or was guilty of contributory negligence, in going under the car, as he did, supported only by the two Norton jacks at one end and the trucks at the other.

[2] By the second assignment of error appellant complains of the refusal of the court to charge the jury that, if the falling of the car was caused by the breaking of the piece of timber under the jack, appellees could not recover. As there could be no question that the breaking of the timber caused the car to fall, this was, in effect, a peremptory instruction to find for the defendant, and the charge was properly refused. Whether Kennedy or Gipson was guilty of negligence in selecting the timber was an issuable fact. Much stress is laid upon the assumed fact that this piece of timber was not furnished for the purpose for which it was used by appellant.

[3] It was shown that jacks were furnished for the purpose of raising cars; that in order to use them for this purpose it was necessary to have timber supports of some kind for them to rest on; and that it was usual, customary, and expected for the workmen to procure such supports as Kennedy and Gipson were using. In such case appellant cannot charge them with negligence in using this piece of timber, unless it appears that they in a negligent manner selected, out of the material from which they were required to select, a piece of timber not suitable for the purpose. In such circumstances, appellant may be said to have furnished for this purpose any timber in the yard apparently sound and suitable, and in this connection what is said by the Supreme Court in H. & T. C. R. R. Co. v. Alexander, 102 Tex. 505, 119 S. W. 1138, is pertinent: "Ordinary care on the part of the master in selecting the tools to be used demands a greater amount of diligence than is required of the servant, under the late act, in using the same. The master has full opportunity to examine, repair, and make sure of the safe conditions of the implement before it is put in the hands of the servant, while the latter must take it as it comes to him, oftentimes act upon the spur of the moment, without opportunity for examination." There was no error in refusing to give the requested charge.

The third, twenty-eighth, and thirtieth assignments of error all present the general proposition that Kennedy was guilty of contributory negligence as a matter of law. We cannot agree with this contention, but are clearly of the opinion that, whether a man of ordinary prudence would have gone under the car, supported as it was, was, under all the evidence, a fact for the jury. The assignments are overruled.

[4] We do not think the facts required a charge on the doctrine of fellow servant. Whatever negligence there was was the negligence of Kennedy as well as Gipson. In all things they acted together, except in the one act of getting the piece of timber, and there is nothing in the evidence which shows any negligence on the part of Gipson in selecting this piece of timber, which all of the witnesses testify was apparently sound and sufficient for the purpose. In everything else that was done, if there was negligence, it was Kennedy's as well as Gipson's. The fourth and twenty-sixth assignments of error presenting this question are without merit.

[5] Appellant requested the court to charge the jury: "If you believe that Kennedy was instructed to repair said car, and you further believe that there was not furnished him safe appliances with which to do the work, and that as an experienced car repairer it was obvious and known to him that the danger of doing the work without such appliances was great and hazardous, he was not required under the law to obey such order, and, if he did with such knowledge and such dangers open and obvious to him, the plaintiffs cannot recover, and you will return a verdict for the defendant." The court refused to give this charge, and the refusal is presented by the fifth assignment. This charge is based upon the proposition that in the circumstances named Kennedy must be held to have assumed the risk of doing the work. The court in its general charge presented the same general proposition, with the qualification that if Kennedy acted as a man of ordinary prudence would have acted, in continuing to work in repairing the car, under the conditions stated and with a knowledge of the defects in the appliances and consequent danger, he did not assume the risk of such danger. This was but the application to the facts of this case of the provisions of the act of 1905, supra, which the requested charge ignores. We

think the charge of the court is correct, and that the requested charge in this particular is incorrect.

The evidence for the appellees presents the theory that Kennedy was required to do this work with appliances that were insufficient for the purpose, that proper supports to hold the car up were not furnished him, that proper supports for the jacks to rest upon were not provided, that he went about the business in the manner in which it was usually and customarily done in the yard at Silsbee, with the knowledge and acquiescence of the foreman, and that he did the best that he reasonably could with the appliances furnished him. If in such case he knew, or in the discharge of his duty must necessarily have known, that the work done in this way was peculiarly dangerous, before the enactment of the statute referred to, he would have proceeded at his peril, assuming himself the risk of the known danger. The difference between the rule of liability under the statute now and as it existed before is forcibly illustrated by the Supreme Court in Railroad Co. v. Alexander, supra. We can hardly think of any work in which the danger was more obvious than in running a locomotive without a pilot, yet the court says that in such case, under the statute, the engineer would be allowed to show, in avoidance of the charge that he assumed the risk, that a man of ordinary prudence would have used the locomotive as he did. The assignment is overruled.

[6] The principles of law set out in the eleventh and thirteenth requested charges, which were refused, are covered by the court's charge on contributory negligence, and the refusal to give either of them presents no error.

The tenth, twelfth, and fourteenth assignments, which are presented together, complain of the court's charge. The assignments cover substantially the entire charge, and the questions presented by the propositions stated have been, to a great extent, disposed of by what has been already said in this opinion.

By the second proposition the contention is made that, the evidence clearly showing that the falling of the car was caused by the manner in which Kennedy used the appliances, the court erred in submitting the issue, as to whether a person of ordinary prudence would have continued in the service, with the knowledge of the defects and dangers, as a limitation upon the defense of assumed risk. The basis of the proposition is not sound. It does not clearly appear that the car was caused to fall by the manner in which Kennedy used the appliances furnished him. It cannot be said, as a matter of law, that they were used in a negligent manner. If, in fact, the support under the jack broke because the jack was placed on such support partly between the end of the tie and the piece of board under the timber, as would appear from the sketch in the rec-

ord, it does not follow that a man of ordinary prudence could not have reasonably supposed that the timber was sufficiently strong to support the jack placed that way.

The third proposition is that there being no evidence that the foreman directed Kennedy to go under the car, or that the appellant furnished him with the block of timber which was used as a support for the jacks, it was error to submit to the jury such facts as a basis for their finding. As to the first matter, the direction of the foreman to finish the repairs on the car, a work which he knew absolutely required Kennedy to work under the car, was equivalent to a direction to go under the car. As to the second matter, the court in its charge used the term appliances, and, if this be taken as referring to the timber under the jacks, we think that, in the circumstances stated, as we have heretofore said, appellant may properly be said to have furnished this piece of timber for this purpose, in the sense that Kennedy and Gipson were required to use this, or any other apparently suitable piece which they might pick up in the yard. None of the propositions advanced under these assignments is tenable, and they are severally overruled.

[7, 8] There is no merit in the ninth assignment. Sustaining the special exceptions to the petition had the effect of eliminating those parts thereof affected by such exceptions. It was not essential that the plaintiffs should have been required to amend, if sufficient of the petition not so affected remained to make a cause of action. At any rate, if appellant desired such action, it should have asked the trial court to require appellees to so amend their petition as to conform to the court's ruling. Objection that this was not done cannot be raised for the first time in this court.

[9] There was no error in permitting the witness Glover to testify over objection of appellant, as to appliances that were used on other railroads in supporting cars set out for repairs, while workmen were under them for this purpose, as was the case with Kennedy when he was killed. St. L. A. & T. Ry. Co. v. Johnston, 78 Tex. 540, 15 S. W. 104; Rice & Lyon, Receivers, v. Bedgood, 54 Tex. Civ. App. 19, 117 S. W. 900; Kirby Lumber Co. v. Dickerson, 42 Tex. Civ. App. 504, 94 S. W. 156.

The testimony was admissible on the issue of ordinary care on the part of the appellant.

The twenty-fourth and twenty-fifth assignments of error complain of the verdict and judgment as not supported by the evidence and against the great preponderance of the evidence. It would be but a reiteration of what has been said to give our reasons for overruling these assignments, which are, we think, fully answered by our conclusions of fact. The assignments are overruled.

[10] Everything of substantial benefit to appellant in the testimony referred to in the seventeenth assignment or error, which was

excluded on objection of appellees, is incorporated in the record in another part of the testimony of the same witness, Glenn, who was permitted to, and did, testify; that is, as to what was said between himself and McQuillen as they were raising the car off of Kennedy, and as to McQuillen then pointing out to him certain tripods then on the ground and in view of the parties. If the testimony referred to in the assignment and bill of exceptions was admissible, its exclusion was harmless in view of this fact.

We will not extend this opinion by a discussion of the four remaining assignments of error. We have carefully examined them, together with the propositions thereunder, and find that none of them presents grounds for reversal, and they are severally overruled.

We find no error requiring reversal, and the judgment is affirmed.

Affirmed.