MISSOURI, K. & T. RY. CO. OF TEXAS v. JOHNSON et al. (No. 5737.)

(Court of Civil Appeals of Texas. March 7, 1917. Rehearing Denied April 4, 1917.)

1. EVIDENCE ☞364—ADMISSION OF MORTALITY TABLES.
In an action for death of engineer in a railway wreck, there was no error in admitting American life insurance table of mortality sent to a life insurance agent by his company and used by him in business.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1520.]

2. EVIDENCE ☞171—BEST EVIDENCE—RAILWAY BULLETIN—COLLATERAL TO ISSUE.
Where a bulletin prescribing speed of railway train was merely collateral to the main issue, the rule that the paper itself is the best evidence did not apply, and the testimony of one who had read the bulletin was admissible.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460, 528.]

3. APPEAL AND ERROR ☞1050(1) — HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY OTHER EVIDENCE.
Admission of secondary evidence of a railway bulletin was harmless, where another witness without objection testified to the same matter.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157.]

4. WITNESSES ☞267—CROSS-EXAMINATION—COURT'S DISCRETION.
The manner of cross-examining a witness is largely in the trial court's discretion.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 923–930.]

5. WITNESSES ☞372(2)—CROSS-EXAMINATION —QUESTION.
Permitting question to witness on cross-examination, "Don't you know that if you, * * * as inspector of the track, * * * swore ties were in bad condition, you would lose your job?" held not an abuse of court's discretion.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1193–1196.]

6. EVIDENCE ☞544 — EXPERT TESTIMONY — CONDITION CAUSING DERAILMENT.
A civil engineer who was a railway expert was competent to express his · opinion as to whether condition of track and ties would cause derailment.
[Ed. Note.—For other cases, see Evidence, ·Cent. Dig. § 2356.]

7. EVIDENCE ☞547 — EXPERTS — LEADING QUESTION PROPOUNDED TO EXPERT.
Question propounded to expert that "this track * * * was thoroughly adequate, nothing in the condition * * * to cause the same (train) to be derailed?" held objectionable as leading.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2364; Witnesses, Cent. Dig. § 849.]

8. APPEAL AND ERROR ☞1058(2)—HARMLESS ERROR—INCLUSION OF EVIDENCE—CURE BY OTHER EVIDENCE.
Refusal to permit an expert to testify as to whether condition of railway track would have caused derailment was harmless, where he had already testified in detail regarding conditions.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201.]

9. MASTER AND SERVANT ☞270(16)—ACTION BY RAILWAY ENGINEER — EVIDENCE OF WARNING—MATERIALITY.
In an action for death of a locomotive engineer, refusal to permit conductor to testify that he warned the engineer at certain stations not to run at high speed on the night of the accident was proper; the issue being as to speed at time of accident, which the witness testified was not excessive.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 926.]

10. WITNESSES ☞405(1) — IMPEACHMENT — CONTRADICTION—IMMATERIAL MATTER.
It is not permissible to impeach a witness by contradicting him upon an immaterial matter.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1273, 1275.]

11. WITNESSES ☞398(2) — IMPEACHMENT BY CONTRADICTION—DIRECT QUESTION.
In impeaching a witness by contradiction, he should be asked the direct question, and not one seeking to draw an inference from an inference.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1274.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Bastrop County; Ed R. Sinks, Judge.

Suit by Mrs. Gertrude Johnson, administratrix, and others, against Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiffs, and defendant appealed. Affirmed.

Page & Jones, of Bastrop, for appellant. S. L. Staples, of Smithville, and Orgain & Maynard, of Bastrop, for appellees.

JENKINS, J. Frank Johnson, deceased, was an engineer upon appellant's train, and was killed October 9, 1914, in a wreck on said road. Appellee Mrs. Gertrude Johnson brought this suit for herself and the children of herself and Frank Johnson, deceased, alleging that the engine upon which the deceased was engineer was derailed by reason of the negligence of appellant in the construction and maintenance of its track at the point of derailment; specifically alleging that said track was negligently constructed; that the rails were defective and badly worn and insufficient to sustain the weight and pressure of the engine, and that the ties were old, rotten, weak, unsafe, split, water-soaked, spongy, too small to support the engine, and spaced too far apart. From judgment in favor of appellees, as to the amount of which there is no complaint, the appellant has appealed and assigns numerous errors.

[1] There was no error in permitting the introduction of the American life insurance table of mortality. The same was shown by the witness Saunders to have been sent to him by the Great Southern Life Insurance Company of Houston, of which he was the agent, and that he used the same in his business as insurance agent, and that he had been engaged in that business for six or seven years.

[2, 3] Appellant assigns error upon the court's permitting the witness Carter to testify, over its objection, that a bulletin had been issued by appellant, limiting the speed of the train upon which Johnson was killed to 45 miles an hour; that this bulletin was in the office of appellant at Smithville, in Bastrop county, Tex., where he had read the same. The objection made to this testimony was that the bulletin itself was the best evidence. This rule does not apply where the document testified about is not the basis of the suit, but is merely collateral to the main issue. Heidenheimer v. Beer, 155 S. W. 355; Larrabee v. Porter, 166 S. W. 405; Dalhart Real Estate Agency v. Le Master, 62 Tex. Civ. App. 579, 132 S. W. 860. Even had the court committed error in the admission of this testimony, it would have been harmless in the instant case, for the reason that it was proven by another witness, without objection, that 45 miles an hour was the limit prescribed by the railway company for the train upon which Johnson was killed. Had it not been true that appellant's bulletin referred to by the witness prescribed this speed, we take it that appellant would have shown that fact in its motion for a new hearing. No such allegation was made in said motion.

[4, 5] The sixth, seventh, eighth, ninth, and tenth assignments of error relate to the manner of cross-examining J. H. Pruett, appellant's roadmaster. The question propounded was:

"Don't you know that if you were to come into this court, now occupying the position you do as inspector of the track to see that the ties are all sound, and if you swore ties were in bad condition, you would lose your job?"

This question, in substance, was repeated three times to this witness. The objection to the question was that it was an attempt to insult, browbeat, and degrade the witness. To all of the questions the witness answered, in substance, that as it was his business to constantly inspect the road, and to report to the company any defect that he found in the ties, that if he should now swear that the ties were rotten it would show that he had failed to discharge his duty to the company, and that he ought to be discharged, if such were the fact, but that this fact would not cause him to swear untruthfully with reference to the condition of the track. The matter of cross-examining a witness is largely in the discretion of the trial court, and we cannot say that the court abused its discretion in this instance to the material detriment of appellant.

[6-8] Appellant assigns error upon the refusal of the court to permit the witness J. A. Thanheiser to answer the following question:

"This track at that point was thoroughly adequate, nothing in the condition of the ties or anything at the point of derailment of the train to cause the same to be derailed?"

To which the witness, if permitted, would have answered: "No, sir." It was shown that he was a civil engineer, and an expert as to railroad building, and was competent to give his opinion. Railway Co. v. Thompson, 75 Tex. 501, 12 S. W. 742; Railway Co. v. Waller, 27 Tex. Civ. App. 44, 65 S. W. 210; Railway Co. v. Sage, 43 Tex. Civ. App. 38, 94 S. W. 1075. It does not appear from the record what objection was made to this question. It was objectionable as being leading, but appellant was not materially injured by the action of the court in sustaining appellees' objection to this question, for the reason that the witness had already testified in detail as to the condition of the road at the point of derailment. We quote from his testimony as follows:

"I examined where the engine left the track. I am confining the answer to the immediate vicinity, right where the derailment occurred, where the engine left the track. The ties were in sound condition. They were sound. The track at that point was in good condition. It was in good condition. In my opinion as an experienced railroad man, it was sufficient to bear the weight of such a train as Johnson was pulling, adequately so, for that purpose, provided he handled the engine and train properly. In my career of 20 years as a railroad man,

since I have been superintendent, it is my purpose to go to every railroad wreck of any consequence on my division. I am the man on whom the railroad company usually relies to determine the cause of wrecks that happen on my division. That is part of my business. The weight of the steel at that point was 85 pounds to the yard. It was laid down new in the spring of 1913. Eighty-five pound steel is considered good, heavy steel. It is recognized as heavy rail. The heaviest used in Texas is 90 pounds to the yard. This track at that point was thoroughly adequate. Nothing in the condition of the track or ties or anything at the point of derailment to cause the derailment of the train."

The witness further testified that in his judgment, judging from the distance that the train went after leaving the rail, it was running at the time of derailment between 55 and 65 miles an hour.

[9] Appellant assigns error upon the refusal of the court to permit the witness Massie to answer the following question:

"On account of the dangerous condition of the night, did you not warn the engineer on the night he was killed, at Smithville, Taylor, and Granger, and say to him that on account of the dangerous condition of the night he should not run his train at a high rate of speed?"

To which question, if permitted, the witness would have answered:

"An old man is supposed to have more discretion than a young man. A conductor of a train, as a rule—it is necessary for him to take every means possible to insure the safety of his train. If you have a freight engineer, not in the habit of pulling a train, it is necessary to take every precaution possible to operate the train. He was a younger man than me, and I instructed him. I did not want the train to run at a high rate of speed anywhere. I would be responsible for the train, and I am telling the truth. I warned him at Smithville, Taylor, and Granger."

[10, 11] The witness Massie was the conductor upon the train. Johnson had been operating a freight train, and had had but limited experience in running a passenger train. Smithville was where this crew took charge of this train. The argument of appellant is that if the conductor warned the engineer at Taylor and Granger, after leaving Smithville, the presumption would be that he had been running the train in excess of the speed allowed after leaving Smithville and Taylor. This was an immaterial inquiry. The point at issue with reference to the speed of the train was as to whether he was running it in excess of the limit at the time of the derailment, and this witness testified that he was not. It is not permissible to impeach a witness by contradicting him upon an immaterial matter; but, if this testimony had been admitted, it would not have contradicted the witness Massie, because he was not asked as to whether the train had exceeded its speed between Smithville and Taylor, or between Taylor and Granger. Had appellant desired to prove that fact, it should have asked the witness the direct question, and not have sought to draw an inference from an inference; that is to say, the only effect of the testimony would have been to infer from the warning

that the engineer had been running the train too fast between Smithville and Taylor, and between Taylor and Granger, and therefore he was probably running it too fast at the time of the derailment.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.