WALTER SILVEY v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 4 October, 1916.)

**Railroads—Negligence—Unloading Car—Gang-plank—Accident—Trials—Evidence—Nonsuit.**

> Where the evidence tends to show that a consignee of plumbing material would not wait for the agent of the railroad company to unload it from the car, but voluntarily took two of his own employees, plaintiff and another, to help him do so; that they used an iron gang-plank about the usual size and kind ordinarily used at railroad stations for such purposes, which was placed at the time from the car door to the depot platform; that after several trips in unloading had been made the gang-plank slipped off of the car door as plaintiff was returning empty-handed for another load, when he could have reasonably seen its condition: *Held*, the plaintiff's injury resulted either from an unforeseen accident or from his own negligence, and recovery was properly denied upon a motion to nonsuit.

CLARK, C. J., dissenting.

CIVIL ACTION, tried at June Term, 1916, of HALIFAX; *Stacy, J.*

The usual issues in an action of this character were submitted to the jury and answered for plaintiff. His Honor set aside the verdict. The usual motions to nonsuit had been entered in apt time. The motion to nonsuit was allowed, and plaintiff excepted and appealed.

*George C. Green, W. E. Daniel for plaintiff.*
*Murray Allen for defendant.*

BROWN, J. The evidence, taken in its most favorable view for plaintiff, tends to prove that one Markham had some building and plumbing material in a car at defendant's station at Roanoke Rapids. The agent of defendant said to Markham that he could not unload the car just then, as he had no one to assist him. Whereupon Markham voluntarily undertook to unload his material, and procured two of his own employees, plaintiff and a colored man, one Hub Mills, to assist. The car was alongside the platform, about 18 inches from it. An iron gang-plank lay across the opening from car door to platform, one end resting on the car door and the other on platform. According to Markham, the gang-plank was about 2 feet wide and about 2 feet long and a quarter of an inch thick. According to plaintiff, "It was an ordinary piece like they always use, 2 or 3 feet wide. It is the kind of iron that was used at these places for unloading cars." Plaintiff further testified that it was wider and as long as the table in the trial court room, which is 2 feet wide and 3½ feet long. There was no defect in the iron and none in the car and platform.

The plaintiff with Markham and Mills commenced to unload Markham's material from the car by carrying it across the iron gang-plank, and each had carried several "turns." Plaintiff says: "I went in to get a turn. Before I went in, Mr. Markham went in. He went in and got a box of fillings." Plaintiff further stated that as he stepped on the end of the iron at the door it gave way and he fell between the car and platform and was injured. Plaintiff further testifies: "The end of the piece of iron was lapping over on the car and on the platform. It looked perfectly safe to me. The iron did not break. It slipped from the door of the car. That car door was open. The width of the door was the width of an ordinary car door. Platform was an ordinary platform. There was nothing about that piece of iron to in any way deceive me. I had been over this same piece of iron twice before—once in and once out. Markham had been over it a round trip, once in and once out, before I had. On the previous trips, when we came out of the car both Markham and I were bearing loads in our arms and could not see. When the iron fell it was in plain view. There was nothing to obstruct my view. I could have seen it. The position that the iron was in the car and the position it occupied on the platform was in my plain full view, and I could have seen it. Colored man helping us walked across the iron. I don't know how many trips he made. Mr. Markham and I were carrying out the light things and he was carrying the heavy things. That was before I was hurt. I don't know how many trips he made. I was going back in when I fell. I had nothing in my hands when I fell."

It is manifest, we think, that plaintiff's injury was due to an unavoidable accident or else to his own carelessness in failing to use his eyes as he crossed the gang-plank, and not to the breach of any duty defendant owed him. Markham was impatient for his material and voluntarily undertook to unload it with his own employees, plaintiff and Mills. The gang-plank was of the kind in general use and, according to plaintiff's own evidence, amply sufficient for unloading the car. Markham and his assistants used it with safety "several trips." When plaintiff was returning to the car for another "turn" the end of the plank in the car door slipped off and precipitated plaintiff to the ground.

The evidence shows that the method was the one necessarily employed in unloading cars and the implement was such as is in general use, without a defect and fully sufficient for the purpose for which it was intended. The use of the gang-plank is extremely simple, and its placing and supervision must of necessity be left exclusively to those who use it. It was the plain duty of plaintiff to watch it and see that it was in proper position so as not to slip before he stepped on it, and that too much of it was not on the platform and too little on the car, and *vice versa.*

It is a matter of common knowledge and observation that a gangplank like the one used will slip from one side to the other so as to make it liable to fall unless kept in position. This is necessarily caused by rolling trucks or walking to and fro repeatedly over it in unloading a car.

It is the duty of those using it to use their eyes and watch it. The railroad can furnish them a safe gang-plank, as it did in this instance, but it cannot furnish eyes, nor can it compel their attention and care. The plaintiff very frankly said that the position of the plank was in full view and that he could have seen it. It is manifest that had he used his eyes, he could have averted the injury.

As said by Dean Swift, quoting from Matthew Henry: "None so blind as those who will not see; none so deaf as those who will not hear."

As declared in Holy Writ: "Having eyes, see ye not? and having ears, hear ye not? And do ye not remember?" Mark 8:18.

The plaintiff's injury is evidently the result of an unfortunate accident which defendant could not guard against and for which it is not liable, *Martin v. Mfg. Co.,* 128 N. C., 264; *Bryan v. R. R.,* 128 N. C., 387; or it is due to plaintiff's own lack of ordinary care, that equally bars his recovery, as he is not an employee of defendant.

*Autry's case,* 156 N. C., 293, and *Finch's case,* 151 N. C., 105, relied on by plaintiff, have no application. In the former the plaintiff was injured by driving his loaded wagon into a deep hole on defendant's right of way, of which it had previous notice and promised to repair. In the latter, the plaintiff established the fact that a hole, caused by a rotten plank in one of the permanent structures of the defendant, was covered by a bale of cotton, and when plaintiff, acting under the instructions of the defendant's agent, attempted to "head up" the bale of cotton, he stepped in this hole and was injured.

Affirmed.

The defendant's appeal in this case is dismissed.

CLARK, C. J., dissenting: In this action for personal injuries the plaintiff was in the employment of L. E. Markham, who went to the station of the defendant to get some freight that he needed in his work as plumber. The defendant's agent told Markham that his freight had not been unloaded, and "told him to unload the material himself." At the request of Markham, the plaintiff and another employee proceeded to help him unload the material from the car. The plaintiff had brought one load of fixtures from the car, and as he stepped upon the iron apron in going back into the car the apron slipped from the car door and he fell between the car and the platform, sustaining serious injury. This iron apron was not defective, nor the car nor the platform

of the car. But the car was 18 inches "or more" from the platform and somewhat higher than the platform, and the evidence· of two witnesses, which must be taken as true, is that this apron was 24 inches wide, and as the car was higher than the platform the margin on each side must have been something less than 2 inches.

· The plaintiff and his employer, Markham, and his coemployee, were engaged in unloading the car at the instance of the agent of the defendant company, and *pro hac vice* were employees of the company, and as such were entitled to a safe place in which to work. They had a right to presume that the iron apron was sufficient. There was no patent defect to put them on guard. There is no evidence whatever tending to fix the plaintiff with any contributory negligence in his manner of crossing from the platform to the car. The apron was placed there by the defendant, who invited him to make use of it, which he did in reliance that it was a safe gangway to pass over. If there had been evidence of contributory negligence, which was contradicted by the evidence of the plaintiff, the burden to prove it is by statute placed upon the defendant and could not be made use of on a motion to nonsuit, or, what is the same, to base a judgment setting aside the verdict as a matter of law.

"He that hath eyes should see, and he that hath ears should hear" is a maxim that applies to the defendant in this case, who furnished an apron that was of insufficient width and placed it in a position in which it was likely to slip and did slip. These were matters which were within the knowledge of the defendant and not within the knowledge of the plaintiff, to whom there was no defect apparent warning him of danger. There is nothing tending to show that the plaintiff tramped over the iron apron in a negligent manner or that his conduct caused him to slip.

The plaintiff went to the station at the invitation of defendant. He had a right to expect that the place which he was given to work in was in a safe condition. He testifies that he examined the iron apron and that it appeared to him to be safe to pass over. He insists that he did all that a reasonably prudent man could have done under the circumstances. The defect was in the width of the iron apron and that it was placed by the agents of the company in such a manner that it could and did slip. This iron apron was as much a part of the platform of the depot, so far as this plaintiff is concerned, as if it had been one of the planks of the floor thereof. If one of those planks had been sound, but laid down without nails to hold it, and the plaintiff had been injured by the plank tipping up or slipping, there could be no question of the liability of the defendant for such negligence. This iron apron was practically a part of the platform, being the gangway from the platform to the car, and with its narrow margin· the defendant, in view of the car being higher than the platform, should have secured the lower edge

from slipping by a cleat, or by driving in two or three nails to prevent its slipping. The failure to do this was the negligence of the defendant, and not the contributory negligence of the plaintiff, to whom the place seemed safe, and who did not contribute to the injury by his negligent manner of using the gangway. There is not a scintilla of evidence tending to show contributory negligence, and, even if there had been, the burden was upon the defendant to establish contributory negligence by a preponderance of proof. It could not be determined by the judge as a matter of law.

In *Finch v. R. R.,* 151 N. C., 105, there was a hole in the platform left by a rotting plank which was concealed by a bale of cotton which the plaintiff was delivering for shipment and heading up for marking. His foot caught in the hole, whereby he was injured. A recovery was sustained, *Brown, J.,* saying: "Plaintiff was obeying the instructions of the defendant's agent." In the present case the defect was not in the iron apron, but in its slipping from the position in which it was placed and the narrow margin, both of which defects were known to the defendant, and it was not incumbent upon the plaintiff, who had never used the premises, to learn of the possible danger.

It was the defendant, and not the plaintiff, who placed the iron apron with its narrow margin in a slanting position without any cleat to hold it from slipping. The plaintiff did nothing to make it slip.

In *Autry v. R. R.,* 156 N. C., 293, plaintiff's intestate was riding in a wagon with goods which he had gotten from the station, and drove into a hole on the right of way, which caused him to fall from the wagon and, a box falling upon him, he was killed. The hole was in plain view, and with care he could have foreseen the probable injury from driving into the hole. But the recovery was sustained upon the ground that the defendant company was required to keep its premises in a reasonably safe condition for persons coming to receive freight. This is a much stronger case for the plaintiff, for here he was on the premises to receive his employer's freight, and by invitation of the company was unloading the car upon an implied assurance that it was safe for him to do so.

Moreover, in this case all these matters were submitted to the jury, and after argument by able counsel and a correct charge from the judge, the jury, whose province it is to ascertain the facts, found that the plaintiff was injured by the negligence of the defendant and that he neither contributed to his injuries nor assumed the risk of injury while unloading the car at the instance of the defendant, who should have unloaded it. Indeed, there was not a scintilla of evidence tending to show contributory negligence or assumption of risk. The injury would not and could not have occurred if the iron apron had been wider, or if a cleat had been placed in the lower edge to prevent it from slipping. The

negligence in these respects was solely the negligence of the defendant. Plaintiff's testimony is that the iron apron was in place when he got there.

The wisdom of the ages has found it necessary for the protection of the weak to formulate and place in our Constitution the provision, "The ancient mode of trial by jury is one of the best securities of the people, and ought to remain sacred and inviolable." Const. North Carolina, Art. I, sec. 19. When the Constitution of the United States was adopted this was one of the provisions which was omitted, but it was thought so essential that the vote of a sufficient number of the States could not be had for ratification until it was agreed that the first ten amendments should be adopted, and among them was this: "The right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reëxamined in any court of the United States than according to the rules of common law."

It has been well said: "Power is constantly slipping from the many to the few." From the beginning there have been constant efforts to restrict the constitutional right to have issues of fact found by a jury of twelve impartial men and not by the judge, and to whittle down the province of the jury, especially in cases where corporations with great influence and numerous counsel at command are defendants in actions of this kind. Usually the plaintiff, as in this case, is an employee without means and without influence, who finds it difficult to secure counsel, except on a contingent fee, and that fact is used against him. When the parties are so unequally matched there is nothing more important in the administration of justice than that this great guarantee of even-handed justice, which is imbedded in the Constitution of the State and of the Union, shall be preserved without diminution and that the respect due the courts shall not be impaired by devolving upon the trial judges the duty, foreign to their functions and forbidden by the Constitution, both State and Federal, of deciding issues of fact.

In this case, as already stated, there is not a scintilla of evidence of contributory negligence or assumption of risk by the plaintiff. If there had been, still the statute of the State, Laws 1887, ch. 33, now Revisal, 483, correcting a former decision by a divided Court, Owens v. R. R., 88 N. C., 502, forbade the judge to pass upon it, but required that it should be proven to the satisfaction of the jury by the preponderance of the evidence; and this has been observed ever since. See numerous cases cited under section 483 in Pell's Revisal. The only exception that the Court has hitherto ventured to make is when the contributory negligence is shown by the plaintiff's evidence, and in this case his evidence negatives, instead of proving, any contributory act on his part. For what purpose was this statute passed if it can be disregarded after the plaintiff has denied any negligence on his part and the verdict of

the jury has sustained his statement? There is no greater danger in the administration of justice than to take from the juries the ascertainment of the facts in actions of negligence against powerful corporations. It is this that has caused both the Federal and the State governments to provide that in all actions for negligence brought by an employee against a railroad company contributory negligence shall no longer be a defense; but that the jury, even when contributory negligence is proven, shall consider the whole matter and apportion the damages. The purpose of this was to prevent the possibility of the judges assuming that as a fact contributory negligence had been proven to the defeat of plaintiff's claim. On this occasion the plaintiff was acting *pro hac vice* as an employee, for at the instance of the defendant he was unloading the car, which it was the duty of the defendant to have done by its regular employees. If one of them had been thus injured by the slanting iron apron not being fastened and slipping, he could have recovered. For a stronger reason the plaintiff, who was there not only as a temporary employee, but to get his employer's goods, and was injured by the defective gangway, is entitled to recover. *Autry v. R. R.,* 156 N. C., 293.

Whether the place was safe or not was a fact for decision by the jury and not for the court. Markham testifies that the iron apron was laid down as a gangway "before he got there." The defendant invited him and the plaintiff to use it by putting them to work unloading the car, which required them to pass over it.

This was not an accident, but as the jury, the only lawful triers of the fact, have found, the injury was caused by the negligence of the defendant in inviting and permitting the plaintiff to unload the car for it by passing over an iron apron which the defendant had previously laid down for him to use in passing from the warehouse to the car, and which, being very little wider than the space between, and in a slanting position, slipped and precipitated the plaintiff into the abyss to his injury, and without any fault on his part.