## EXPORTERS' & TRADERS' COMPRESS & WAREHOUSE CO. v. HEMPHILL.*
(No. 447.)

(Court of Civil Appeals of Texas. Waco. Feb. 3, 1927. Rehearing Denied March 17, 1927.)

**1. Appeal and error ⬤╾930(3)—In determining whether submission of issues requested by plaintiff was error, only evidence favorable to him will be considered.**

In determining whether court erred in submitting to jury issues requested by plaintiff, Court of Civil Appeals must consider only evidence favorable to plaintiff's contention.

**2. Appeal and error ⬤╾930(3)—No question of preponderance or conflict in evidence is involved in determining whether submission of issue was error.**

In determining whether court erred in submitting to jury issues requested by plaintiff, no question of conflict in evidence or preponderance thereof is involved.

**3. Warehousemen ⬤╾34(9)—Whether warehouseman failed to furnish suitable fire hose held for jury.**

In action for value of cotton burned while in defendant's custody, evidence *held* to take to jury question whether defendant failed to furnish sufficient and suitable fire hose, where hose which had hole in it was not long enough to reach to fire.

**4. Warehousemen ⬤╾34(9)—Whether condition of warehouseman's fire hose was proximate cause of loss by fire held for jury.**

In action for value of cotton burned while in defendant's custody, evidence *held* to take to jury question whether condition and insufficiency of fire hose furnished by defendant was proximate cause of destruction of cotton, where fire was discovered before it had gained headway.

**5. Appeal and error ⬤╾842(4)—Ordinarily, proximate cause of injury is fact question.**

Ordinarily, proximate cause of injury is question of fact, and determination of trier of facts will not be reversed on grounds purely theoretical.

**6. Trial ⬤╾142—To establish issue as matter of law, which is ordinarily fact question, uncontradicted evidence must be so certain that reasonable minds cannot differ as to conclusion to be drawn therefrom.**

Issue which is ordinarily one of fact is established as matter of law only when evidence to be considered in determining it is uncontradicted, and so certain that reasonable minds cannot differ with reference to conclusion to be drawn therefrom.

**7. Warehousemen ⬤╾34(6)—Evidence of custom of others is admissible, though not conclusive on issue whether warehouseman provided suitable fire hose.**

In showing whether one storing cotton provided sufficient and suitable hose for fire protection, evidence of custom followed by others in same business, though admissible, is not essential or conclusive.

**8. Warehousemen ⬤╾24(7)—Storage receipt held not to exempt from liability for fire loss caused by warehouseman's negligence.**

Provision in cotton storage receipt, requiring redelivery, "acts of Providence, fire, and damage excepted," *held* not to exempt from liability for fire loss caused, or contributed to, by warehouseman's negligence.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Action by S. R. Hemphill against the Exporters' & Traders' Compress & Warehouse Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Bartlett & Carter, of Marlin, and Spivey & Spivey, of Waco, for appellant.

Sam R. Scott, of Waco, and Frank Oltorf, of Marlin, for appellee.

GALLAGHER, C. J. Appellee S. R. Hemphill sued appellant, Exporters' & Traders' Compress & Warehouse Company, a corporation, for the sum of $1,420 damages, which he alleged was the value of 19 bales of cotton delivered by him to appellant, which cotton appellant failed and refused to redeliver to him on demand. Appellee alleged, in substance, that appellant had theretofore been engaged in compressing cotton; that, in addition to receiving cotton to be compressed, it also received and stored cotton for hire; that it thereby assumed the duties, responsibilities, and liabilities of a warehouseman; that, when appellant received said cotton, it issued receipts therefor, stating that the same was received for storage and compression, and binding it to redeliver the same to the legal holder of such receipts or to pay the cash market value thereof. Appellant in its answer alleged that, if said cotton was received by it, the same was received under an express agreement that it was not liable therefor if the same was destroyed by fire, and that the same was so destroyed. Appellee replied thereto by alleging that appellant was negligent in some sixteen specific matters with reference to the safekeeping of said cotton, and that each of the acts of negligence so charged was the proximate cause of the destruction thereof. Appellee further alleged that the stipulation exempting appellant from liability in case of the destruction of said cotton by fire was, because of such negligence, void and unenforceable, and constituted no defense to the demands asserted by him in this suit.

The case was submitted to a jury on special issues, in response to which the jury found, in substance: (a) That appellant did not use ordinary care in supplying water hose of sufficient length to reach the place on its platform where the fire originated, and that such failure proximately caused the destruction of appellee's cotton; (b) that appel-

---

⬤╾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 11, 1927.

lant did not use ordinary care in supplying its platform with hose of sound material, and that such failure proximately caused the destruction of appellee's cotton; that the reasonable market value of appellee's cotton was $956.31. The jury also found in response to special issues submitted at the request of appellee, in substance: (a) That appellant did not use ordinary care in requiring its night watchman to encircle all the cotton on its platform on his regular trips of inspection, and that such failure proximately caused the destruction of appellee's cotton; (b) that appellant did not use ordinary care in providing means of observation, inspection, and examination of cotton situated on the extended portion of its platform with a view of protecting the same from fire, and that such failure proximately caused the destruction of appellee's cotton.

The court rendered judgment in favor of appellee on the verdict of the jury, and said judgment is here presented for review by appellant.

## Opinion.

[1, 2] Appellant presents as ground for reversal a group of propositions, contending that the court should have given a peremptory instruction in its favor, because there was no evidence authorizing the submission of any issue of negligence, and no evidence authorizing the submission of any issue of proximate cause. The issues of negligence and proximate cause with reference to the length of the hose and with reference to the soundness of the material composing the same are so intimately related that they must necessarily be considered together. In determining whether these issues should have been submitted to the jury, we must consider only the evidence favorable to appellee's contention with reference thereto, discarding all evidence to the contrary. No question of conflict in the evidence or the preponderance thereof is involved. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315 (writ refused), and authorities there cited. We will therefore not burden this opinion with an attempted recital of all the evidence. Neither will we attempt to reconcile any conflicts therein, but will merely recite the evidence most favorable to appellee's contention that appellant failed to furnish sufficient and suitable hose, and that such failure was the proximate cause of the destruction of his cotton.

[3, 4] The evidence does not supply an accurate description of appellant's plant. A map included in the statement of facts shows that the platform on which said cotton was stored was bounded on the south by Capps street; that said platform was approximately 350 feet wide at its said south boundary; that it extended northward approximately the same distance; that the east line thereof ran approximately at right angle with said street, but that the west line bore east-

ward, so that the distance between said lines at the north end of the platform was, according to the testimony of the watchman, approximately 150 feet. The office of the night watchman referred to in the testimony was at the extreme southeast corner of said platform. There was at the time about 2,250 bales of cotton stored on said platform. The entire plant, and practically all said stored cotton, were destroyed by fire on the night of November 18, 1920. Mr. Dossett of Waco, since deceased, was interested in said plant, but the nature and extent of his authority with reference thereto are not definitely disclosed. Mr. Whitworth testified that he was superintendent of the compress, but another witness referred to Mr. Dossett as manager. It was with Mr. Dossett, however, that the special agent of the insurance company conferred with reference to the facilities for extinguishing fire maintained at said plant. Said agent testified that he examined conditions at said plant shortly before the fire. While his recollection seems to have been rather indistinct at the time of the trial, he testified affirmatively that the barrel and bucket equipment was insufficient, and not properly maintained. He further testified that, according to his recollection, the hose system was in bad repair and inadequate. He testified affirmatively that he recommended to Mr. Dossett that new hose be attached to all hydrants and that such new hose be of sufficient length to reach every part of the platform. There is no contention that these recommendations were complied with. Appellant's night watchman testified that he was required to make a trip around the platform every 30 minutes. He testified that he had made his round and returned to the office; that he had been there about six minutes when he looked out of the window, and noticed the glare of the fire; that he ran first to the northeast corner of the platform, then to the northwest corner; that he thought some one must have set the fire; that he looked on the east side and on the west side to see if he could discover any one running away, but that he saw no one; that he then ran back to the office, turned in the alarm, and ran back to the fire. He testified with reference to his actions after he returned to the fire as follows:

"After I turned in the alarm I went back and tried to use the hose, but I couldn't do any good. I think after I got the hose started that fellow Norman Allen came over and helped me * * * The hose wasn't no account either, and we couldn't do anything with it. * * * Water wouldn't come out; it had a hole in it."

Appellee's witness Norman Allen testified he heard the alarm when he was about three blocks from the fire, and ran to it. He further testified:

"When I arrived at the compress, I saw the fire. At the time I got to the watchman the fire

was about 15 or 20 feet from the end of the hose he was using. It covered a small space, only a few feet. On reaching the compress I went to where the fire was, that is, within a few feet of the same where the watchman was using the hose trying to throw water on the fire. * * * When I got on the platform I would say that a space of about 8 or 10 feet on the platform was burning. I would say that about three or possibly four bales of cotton standing on ends was all that was afire at that time. As soon as I reached the platform I saw the watchman near the fire, and went immediately to him, holding the hose, trying to put water on the fire. I discovered that water was coming out of the side of the hose through a hole a short ways back from the end. Being anxious about the fire, as I had some sixteen bales of cotton on the platform, I said to the watchman, 'Give me the nozzle and you fix the hole in the hose.' I took the nozzle, and tried to throw the water on the fire. It had no force, and the water just barely reached the place of the fire, but didn't carry any force on account of the hole which was in the hose through which the water was escaping. I tried to get closer to the fire with the hose, but was unable to do so because the hose was too short. The watchman tried to stop the hole in the hose, but was unable to do so, and I also tried to stop it, but was unable to do so. * * * The hose of which I have spoken was an old hose; it was not sound; and I would say not in usable condition for an occasion like that. If the hole had not been in the hose so that all the water could have been forced through the nozzle, I could have put out the fire when I got there. If the hose had been long enough so that I could have gotten up to the fire while it was small, I believe I could have put the fire out anyway."

Appellant's witness Miss Beck, a telephone operator, testified that she lived on the hill north of the compress. The distance between her house and the compress was not shown. She testified that she went to the back porch for a drink of water, and saw the blaze. She further testified:

"At the time I saw that little flame it was about a foot and a half in one little spread—about like a torch."

She further testified that she immediately called the girls at the telephone office, and asked them to turn in an alarm. Whether the alarm heard by Allen was given in response to this request or was turned in by the night watchman the evidence does not disclose. Appellant's witness Young testified that he lived about 400 or 500 feet from the compress; that he had retired, but his attention was attracted by a noise and halloing across the way; that he did not recall having heard any alarm; that, when he heard the noise, he pulled the shade back, looked out, and saw the fire; that it looked like the fire was 5 or 6 feet in a circle. Appellant's witness Fant, a member of the fire department, testified that, if a man with a good hose had been right at the fire when it

was not any bigger than 10 feet, he might have put it out and might not.

[5, 6] We think the evidence of negligence above quoted required the court to submit such issue to the jury, and that such evidence amply sustains the findings of the jury thereon. Was such evidence sufficient to authorize the court to submit the issue of proximate cause in connection with such issues of negligence? If such evidence, standing alone and uncontradicted, was sufficient to support a finding that the defects in the hose were the proximate cause of the burning of appellee's cotton, the court properly submitted such issue. To express the proposition more concretely, if such evidence, standing alone and uncontradicted, was sufficient to support a finding that had the hose been long enough to reach the fire, and sufficiently sound to carry the water and deliver all the same through the nozzle thereof, the watchman and the witness Allen, singly or acting together, could and would have extinguished the fire and saved appellee's cotton from destruction thereby, the court was authorized to submit such issue. We think the evidence quoted meets the test prescribed. Stewart v. Miller, supra, and authorities there cited. Our Supreme Court, in Mexican National Ry. Co. v. Mussette, 86 Tex. 708, 719, 26 S. W. 1075, 1079 (24 L. R. A. 642) speaking through Chief Justice Stayton, said:

"It frequently becomes difficult to determine the proximate cause of an injury; but it is ordinarily a question of fact to be determined by the court or jury trying the cause, whose finding will not be reversed on grounds purely theoretical."

See, also, Lancaster v. Fitch, 112 Tex. 293, 299, 246 S. W. 1015; Jones v. George, 61 Tex. 345, 353, 48 Am. Rep. 280; Ft. W. & D. C. Ry. Co. v. Amason (Tex. Com. App.) 276 S. W. 162, 166; Dallas Ry. Co. v. Warlick (Tex. Com. App.) 285 S. W. 302, 304; Fort Worth Belt Ry. Co. v. Cabell (Tex. Civ. App.) 161 S. W. 1083, 1085, 1086 (writ refused). An issue ordinarily one of fact is established as a matter of law only when the evidence to be considered in determining the same is uncontradicted, and so certain that reasonable minds cannot differ with reference to the conclusion to be drawn therefrom. We cannot agree with appellant's contention that the evidence above quoted, standing alone and uncontradicted, shows with such certainty that the watchman and Allen could not and would not have extinguished the fire if the hose had been of good quality and sufficient length. We therefore hold that the court did not err in submitting the issue of proximate cause to the jury. It necessarily follows that appellant's requested peremptory charge was properly refused.

[7] Appellant further contends in this connection that the fact that the hose was torn and too short to reach the fire was insuffi-

cient to support a finding of negligence, and that it devolved upon appellee to further prove that other persons engaged in the business of storing cotton provided suitable hose for the extinguishment of fires. While evidence of the custom followed by others engaged in the same kind of business is admissible to aid a jury in passing on the issue of negligence, such evidence is not essential to a finding on such issue, nor conclusive on such issue when so introduced. Cameron Compress Co. v. Whitington (Tex. Com. App.) 280 S. W. 527, 528, 529.

Our holdings on the issues above discussed render it unnecessary to consider appellant's complaint of the special issues submitted by the court at the request of appellee.

[8] The storage receipts issued by appellant at the time it received appellee's cotton were each, so far as material, as follows:

"Received of S. R. Hemphill one bale of cotton for storage and compression, and hereby bind ourselves to redeliver it to the legal holder of this receipt or pay the cash market value thereof, acts of Providence, fire, and damage excepted."

Appellant contends that said provision is effective to relieve it from liability for the destruction of appellee's cotton because such destruction was the result of a fire. Similar language was construed by the Commission of Appeals in Cameron Compress Company v. Whitington, supra, and held to exempt from liability only in event the loss by fire was not caused, or contributed to, by the negligence of the storer or warehouseman. Said contention is therefore overruled.

The judgment of the trial court is affirmed.