HOUSTON BELT & TERMINAL RY. CO. v.
ROGERS et al.

No. 9551.

Court of Civil Appeals of Texas. Galveston.
Oct. 22, 1931.

Rehearing Denied Dec. 10, 1931.

Andrews, Streetman, Logue & Mobley and T. A. Slack, all of Houston, for appellant.

S. O. Lovejoy, Cole, Cole, Patterson & Kemper, and W. L. Kemper, all of Houston, for appellees.

GRAVES, J.

Pursuant to a jury's verdict on special issues, the appellee, an employee of the Petroleum Iron Works, a corporation, was awarded $7,500 damages against the appellant as for its negligent failure to furnish him, an invitee thereon for the purpose of loading steel by means of a crane located on a "team track" of the railway company in its Houston yards from the ground beside this track onto his employer's autotrucks, safe premises upon which to so do that work, in that they were both inadequate and in defective condition; the crane having in consequence turned over under his own operation thereof in thus attempting to transfer the steel, breaking and pulling up one of the railroad rails along with it, the mishap inflicting serious personal injuries upon him.

The iron works, appellee Rogers' employer at the time, carried with the Standard Accident & Insurance Company a policy of compensation insurance that covered him, and, having been brought into the suit through a cross-action filed against it by appellant under averments that its negligence had either wholly caused or contributed toward causing the appellee's injuries, was accorded a peremptory acquittal of any such alleged liability by the court.

The insurance company, also a party, was given a $2,426 apportionment out of the appellee Rogers' judgment, pursuant to an assignment for that much thereof that had been filed in the cause by himself and his attorney.

Inveighing here through able counsel, not alone against all substantive features of this judgment as rendered, but also against many of the procedural processes by means of which it was arrived at, appellant earnestly urges that the evidence was insufficient either to take the cause to the jury in the first instance or to support the findings thereafter made; that the verdict returned afforded no proper basis for the judgment because of both self-destructive internal conflicts and 'the absence of findings necessary to the support of a recovery at all, and that the answers to the special issues submitted were so contrary to the overwhelming weight of the testimony as to palpably indicate that the verdict was based alone upon passion, prejudice, or other improper motive; further, that the court reversibly erred in admitting testimony over its objection, particularly in receiving certain alleged bills of lading purporting to evidence the consignment of the steel the appellee was handling when injured to his employer, Petroleum Iron Works, over appellant's railway tracks, and in overruling certain of its exceptions to the charge given the jury.

In short, the leading contention is that the theory on which the trial court submitted the cause to the jury, that the evidence raised the issue of the appellee's having been an invitee on appellant's track for the work he was injured in doing, to whom it was due the use of ordinary care in the furnishing of safe premises for the purpose, was all wrong; wherefore its request for a peremptory instruction should have been given, or the verdict should have been set aside because neither it nor the supporting evidence reflected any facts constituting the appellee such an invitee nor furnishing any basis upon which a duty on appellant's part to furnish him a safe place to do the work could be predicated.

The appended argument is that, while the railway yards and tracks upon which the steam crane was being so operated by the appellee at the time were those of the appellant, they were only what were known as and intended for "team" or yard tracks, and were then in normal condition for that use; that the crane did not belong to appellant, nor was there any showing how the steel being handled with it came to be there beside its tracks, nor of any contractual or other connection with or knowledge of such operations on appellant's part, nor of any benefit or consideration whatever moving to it on account thereof, hence none of any dereliction in its duty affecting the same.

After careful consideration of the record, however, we conclude that the trial court was right, both in so submitting the cause and refusing to set aside the jury's verdict thereon.

In the circumstances shown, the approved rule of law for the determination of when one is an invitee in such situations seems to us to support that action; the court in Moreman Gin Co. v. Brown (Tex. Civ. App.) 291 S. W. 946, 947, thus quotes it from Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463:

"It has been well said, however, that no invariable test for the difference of a licensee and a person on premises by invitation can be given in general terms, but the rule laid

422

down by the Supreme Court of Massachusetts in Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463, is commended by Elliott in his work on Railroads, § 1249, as well as by others. The rule is thus stated:

" 'To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.' "

█ █ It was therefore not necessary in this instance for appellant to have been directly shown to have contracted for such use of its tracks for a consideration or benefit to it, so, as determinative of whether or not the appellee was either an express or an implied invitee on its premises for the purpose of doing the work he was doing there, in either of which situations the same duty would have been due him from it as if he had been appellant's employee (Armstrong Co. v. Adair, 112 Tex. 439, 247 S. W. 848), the trial court submitted to the jury these special issues:

"Special Issue No. 4.

"Was the steel, which was being handled by the plaintiff, J. P. Rogers, with the crane at the time of the accident, there at the place of the accident under bills of lading in which it was consigned to the Petroleum Iron Works?

"Special Issue No. 5.

"Did such bills of lading contemplate or involve loading by the consignee of the steel out of the team tracks onto trucks as was being done by plaintiff, J. P. Rogers, at the time of the accident?

"Special Issue No. 6.

"Was the plaintiff, J. P. Rogers, where he was at the time of the accident for a purpose connected with the business in which the defendant, Houston Belt & Terminal Railway Company, was engaged or which it permitted to be carried on there?

"Special Issue No. 7.

"Did the defendant, Houston Belt & Terminal Railway Company, permit the use of the crane which was being operated by the plaintiff, J. P. Rogers, at the time of the accident, at the place where the accident occurred, for the purpose in which he was then and there operating it?"

These among other related inquiries—such as concerned the capacity in which the appellee was operating the crane at that place on the team-tracks when injured, the ownership of the tracks and of the steel lying beside them, as well as the presence of the crane itself thereon—all having been answered favorably to the appellee's claims, on what we determine to have been sufficient evidence, his status as at least an implied invitee on the appellant's railway track and in the use of the crane located thereon for the purpose of doing the work he was engaged in when injured became established; indeed, in appellant's brief, after admission that the accident happened to the appellee while operating the crane on tracks belonging to it preparatory to loading steel onto trucks belonging to his employer, the Petroleum Iron Works, this further concession is made:

"The evidence was undisputed that agents and servants of the railway company knew the plaintiff was there, and there is no evidence that they forced him to evacuate the place. Therefore, it may be said that they did 'permit' his operations but the word 'permit' does not imply a beneficial legal relationship. We may say the same for the answer to special issue No. 7, that the defendant railway company did 'permit' the use of the crane there. It is a reasonable inference from the evidence that they knew the crane was there and made no objection to its use."

Its brief is, however, somewhat inept in its recitation that this steam crane was shown to have entirely belonged to others than appellant; the evidence on that feature being in substance that it belonged to the I. & G. N. Railway Company, a mere subsidiary of the St. Louis, Brownsville & Mexico Railway Company, which latter in turn was one of the joint owners of the appellant, and that the I. & G. N. Company had delivered the crane to the appellant for its Texas Avenue yard in the city of Houston. Appellant's vice president testified that the permission to use all cranes operated on any of its tracks would be granted or determined by its superintendent, while its roadmaster and superintendent of terminals, respectively, added that its own engines and employees operating them under orders brought this crane, as they did all others under the long-standing custom, into its yards for such purpose and use on the tracks here involved as it was being put to by the appellee on this occasion; that "it is customary to use those tracks for loading and unloading, and they have been used for that purpose for a number of years before the accident occurred. They used them for loading and unloading with a crane before that time. I knew prior to this accident that there was another crane that was overturned down there. I do not remember how long prior to it, but it was not very long. * * * The owners of the steel would be there to unload the steel off the ground on to the trucks. I know it is necessary to use a crane for that; * * * "the same crane that overturned on the 28th of March, 1928, unloaded the steel that was on the ground at the time of the accident; this same crane was overturned in

that locality about thirty days prior to that time and I was yardmaster at that time, being in charge of the switching operations. With reference to your question as to whether or not I knew if that crane that turned over the last time, if I knew it was being used by the Petroleum Iron Works for the handling of steel that came in over those tracks; my answer is, Yes, sir."

It seems well-nigh idle to still maintain, as against a great weight of testimony in the record, both direct and circumstantial, of the same trend, of which that referred to is a mere bagatelle, that Rogers was not on the occasion of his injury reasonably shown to have been on and using that crane and railway track, together with the supporting facilities, for a purpose not only connected with the business appellant was itself engaged in, or permitting to be carried on there, but also in which there was at least a mutuality of interest between his employer and it—that is, the removal therefrom of large accumulations of the former's structural steel that had come in over and been unloaded with this same crane beside the tracks of the latter— as the jury found on this feature in answering the quoted inquiries, the bills of lading, the admissibility of which will be referred to infra, under which this steel the appellee was thus undertaking to remove from appellant's team tracks had been so brought in there over the latter's connecting lines, showed the consignment thereof to his employer, the Petroleum Iron Works Company, at appellant's usual place of delivery, the Texas avenue team track in Houston, Tex.; wherefore appellant's interest in the furtherance of its business as a common carrier did not wholly end with the mere dumping of the steel beside its team tracks, but contemplated and looked to the removal and appropriation of the shipment by the consignee at such destination through the use of the equipment the railway company maintained or permitted to be employed on its premises for that purpose. In such circumstances the consignee's employee is so engaged by invitation of the carrier, and it owes him the duty of exercising ordinary care to see to it that these premises are reasonably safe for that purpose. Moreman Gin Co. v. Brown, supra; Hanson v. Ponder (Tex. Com. App.) 300 S. W. 35; Eason v. Railway, 65 Tex. 577, 57 Am. Rep. 606; Missouri, K. & T. R. Co. v. Thomas, 48 Tex. Civ. App. 646, 107 S. W. 868; Foster Lumber Co. v. Rodgers (Tex. Civ. App.) 184 S. W. 761 (error refused); Hicks v. R. R. Co. (Tex. Civ. App.) 212 S. W. 840.

The jury found, on what seems to this court to have been ample if not compelling evidence, that appellant in this instance negligently failed to live up to that duty; that through the lack of such care the track, ties, and rails had not only been allowed to become old, rotten, and infirm, but also that the rails had been inherently too light for the use of them so permitted.

By a like sufficiency of evidence, and under a charge on that issue that literally cross-examined them on all the main averments charging the appellee with contributory negligence, the jury acquitted him of any complicity in bringing about his own injury.

■ But appellant vigorously assails the verdict as being so conflicting in its component parts as to be wholly self-destructive; this, we conclude, is at most only apparent rather than real, when the whole record is looked to.

In defining "proximate cause," the court had first told the jury: "The act of omission must be such that a person of ordinary care and prudence would anticipate that the particular injury complained of, or some similar injury, would probably result therefrom." After their retirement the jury first requested further explanation of the term "proximate cause," which the judge refused by saying he could not furnish anything other than that given in the main charge, to which they were instructed to refer. They then further asked whether special issues 10, 13, 18–A, 20–E, and 20–F, submitting whether each of the alleged particular acts of negligence therein referred to was a proximate cause of appellee's injuries, might be respectively answered "it was partially." The response to this was: "The court instructs you that the answers to these issues must be made in conformity with the instructions in the main charge."

In these circumstances, this excerpt from the appellee's brief may properly be taken, we think, as the correct appraisement on the whole record of the jury's determination of the question of proximate cause: "Hence, having in effect been instructed that there could not be more than one proximate cause, and then instructed in effect that they could not find that all acts of negligence on the part of defendant, save one, contributed 'partially' with the overturning of the crane as proximate causes of the injuries, they expressed their views on the subject in the manner which admitted of the least change possible in expressing the meaning they intended to convey by accepting the issue which nearest combined all of these issues into that single question they were compelled to solve, and returned their verdict accordingly, that the defendant's negligence in not discovering, prior to plaintiff's injuries, the defective condition of the track was the proximate cause of plaintiff's injuries. * * * What the jury did in pursuing their effort to comply with the charge of the court, as they understood it, was simply to find that while appellant's negligence in regard to the ties and in regard to the east rail, although not respectively sufficient when each finding is con-

sidered separately and alone to constitute proximate cause, yet when taken together, the one concurring with the other, was sufficient."

Thus interpreted, a reasonable explanation of what was intended by the verdict as an entirety is afforded—that is, that the negligence of appellant in not discovering the defective condition of its track before the occurrence was *the* proximate cause the court in effect directed them to find; their separate findings seem to blend into that as a harmonized whole; wherefore, there being evidence to support that result, it should be upheld. Perez v. Houston & T. C. Ry. Co. (Tex. Civ. App.) 5 S.W.(2d) 782; Patterson v. Allen, 50 Tex. 23; Crenwelge v. Ponder (Tex. Com. App.) 228 S. W. 145; Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015 (error refused); Dallas Nat. Bank v. Peaslee-Gaulbert Co., (Tex. Civ. App.) 35 S.W.(2d) 221; Northern Texas Traction Co. v. Weed (Tex. Com. App.) 300 S. W. 41; Texas Central Ry. Co. v. Bender, 32 Tex. Civ. App. 568, 75 S. W. 561 (error refused).

■ Appellant's leading objection to the receipt of the before-mentioned bills of lading, which evidenced the transportation of the steel involved over its lines under consignment to the appellee's employer at Houston, was that it indisputably appeared both from the face thereof and evidence aliunde that they were not the originals; hence not the best evidence of the facts thereby sought to be established. Aside from the extended controversy between the parties as to whether or not these papers were shown to be all the bills of lading there ever were in existence, it seems clear that, even conceding them to have constituted but secondary evidence, they were admissible, for the reason that this suit was in no sense one upon them as a contract, being founded rather upon the common-law doctrine of negligence in the alleged failure to furnish an invitee safe premises upon which to work; therefore these documents were merely collateral to the main issue involved, and the best evidence rule as to them had no application. Missouri, K. & T. Railway Co. of Texas v. Johnson (Tex. Civ. App.) 193 S. W. 728; International & G. N. Railway Co. v. Lynch (Tex. Civ. App.) 99 S. W. 160 (error denied).

The further objection "that there was no evidence that any steel, of the shipment of which they purported to be a memorandum, was the same steel which was being loaded or unloaded at the time of the accident to the plaintiff," has been answered by the quotation, supra, of direct testimony to the contrary from appellant's general yardmaster at the time.

■■ We find no evidence raising an issue over whether or not this injury was the result of an unavoidable accident; hence there was no error in the court's refusal to submit such an inquiry. The record conclusively shows that it was proximately caused by the negligence of one or the other of the parties or by that of the two combined, all of which questions the jury settled adversely to appellant, hence could not at the same time have likewise resulted from inevitable accident. Boyles v. McClure (Tex. Com. App.) 243 S. W. 1080; Rosenthal D. G. Co. v. Hillebrandt (Tex. Com. App.) 7 S.W.(2d) 521; Bailey v. Woodrum Truck Lines (Tex. Civ. App.) 36 S.W.(2d) 1090; Miller v. Panhandle & S. F. Ry. Co. (Tex. Civ. App.) 35 S.W.(2d) 194, Dallas Railway & Terminal Co. v. Darden (Tex. Civ. App.) 23 S.W.(2d) 739; Texas Interurban Ry. v. Hughes (Tex. Civ. App.) 34 S.W.(2d) 1103; Northern Texas Traction Co. v. Armour & Co. (Tex. Civ. App.) 290 S. W. 544.

There is no merit in appellant's contentions, either (1) that this verdict was the result of passion, prejudice, or some other improper motive; or (2) that the peremptory instruction in favor of the Petroleum Iron Works was improper. It made no claim anywhere that the $7,500 verdict was excessive, nor produced any evidence from which a legitimate inference as to the jury's having been actuated in returning it by any such motive could reasonably have been drawn; neither did it sustain its counter charge that the accident was either wholly caused or contributed to by the negligence of the iron works; about all that was shown as affected the latter concern being that appellee Rogers was its employee for the work he was doing at the time.

■ The apportionment of the appellee's recovery between himself and the insurance company, which had joined him in bringing and prosecuting the suit for their mutual benefit in his name only, pursuant to an assignment between them for that purpose that had been filed in the trial court, was not improper; the matter being of no concern to appellant, especially as it had filed no plea in abatement questioning their right to so sue. Epting v. Nees (Tex. Civ. App.) 25 S.W. (2d) 717 (error refused); Galveston, H. & S. A. Railway Co. v. Mallott (Tex. Civ. App.) 6 S.W. (2d) 432; Lancaster v. Hunter (Tex. Civ. App.) 217 S. W. 765, 768.

If there were any errors in the submission of the large number of special issues, or in the various instructions given, or in the receipt or rejection of evidence, we think they were not of such nature as were reasonably calculated to cause or probably did cause an improper verdict and judgment; wherefore a reversal should not follow.

These conclusions require an affirmance of the trial court's judgment; it has accordingly been so ordered.

Affirmed.