### GULF, C. & S. F. RY. CO. v. IRICK.

#### No. 8636.

Court of Civil Appeals of Texas. Austin.

April 20, 1938.

Rehearing Denied May 18, 1938.

Dibrell & Snodgrass, of Coleman, and Terry, Cavin & Mills and Rupert R. Harkrider, all of Galveston, for appellant.

Baker & Baker, of Coleman, for appellee.

BAUGH, Justice.

Appeal is from a judgment for $12,500 based upon a special issue verdict in favor of Irick, plaintiff below, against the Railway Company. The suit was for damages for personal injuries sustained by Irick while assisting in loading cotton from appellant's platform into its cars at Santa Anna, Texas, in the nighttime. It was predicated upon the negligence of the Railway Company in two respects, both grounds being found by the jury in favor of plaintiff. First, because of the failure of the Railway Company to furnish a safe running board for use in trucking the cotton from the platform into the cars; and, second, because of the failure of the Railway Company to have its cotton platform lighted with electric lights.

The material facts are undisputed and were substantially as follows: Appellant's cotton platform was uncovered and unlighted. The Railway Company spotted its cars alongside, and furnished the trucks for loading cotton into the cars and the steel running boards to span the distance between the platform and the cars over which the cotton was trucked into the cars. Several of these running boards had been placed on the cotton platform at intervals near the track and the one found nearest the car to be loaded was habitually used. On the occasion in question five cars had been spotted for loading, and were loaded during the afternoon and night, the last carload being completed about 10:30 at night. The regular steel running board designed and manufactured for this particular purpose was about 3 feet wide, about 5½ feet long, had flanges extending upward on the sides to prevent the truck wheels from running off of it when used. The end placed in the car was cupped, or turned down, so as to hold to the floor of the car and prevent its slipping. The other end was sharp so as to

prevent jars and jolts as loaded trucks were rolled onto it, and to likewise prevent slipping on the platform.

The Railway Company, in addition to these running boards, of which there were several, had also placed on the platform for use, and, which had been in use for several years, a heavier running board, being a section of old boiler plate, with rivet holes at the ends, and approximately four feet wide and five feet long. This plate was somewhat thicker than the running boards regularly designed for loading and unloading freight cars. It was about a foot wider and some 4 or 6 inches shorter than the others, had no flanges on the sides and nothing at either end which would cause it to grip or adhere either to the platform on the one end or to the car floor on the other. This particular running board appears to have been put into use as additional equipment, because it was stronger than the others, for the purpose of loading and unloading heavy freight, but had come to be habitually used, along with the others, for loading cotton; and the Railway Company kept it on its platform along with the others, for that purpose. Its continued use had worn its surface sleek and rendered it, according to the testimony, more or less slippery.

On the occasion in question, the plaintiff Irick was employed by one Morris, who was paid to load the cotton by the shipper and not by the Railway Company. The cotton was being loaded for shipment to Brownwood where it was compressed and reshipped, most of it in interstate commerce. The testimony showed that Morris had theretofore loaded or assisted in loading a considerable amount of cotton at this point for shippers; but that the occasion in question was the first instance in which Irick had done so. The method of loading was to place one tier of bales of cotton horizontally on the floor of the car; and on top of that a second tier of bales of cotton upright, or by standing them on ends. The injury occurred about 10:30 at night as the last bale of cotton was being loaded into the last car. In doing so, one man was stationed inside the car to help pull it into place in front of the car door; and three others remained outside. The bale was trucked onto the running board, on which these three men stood lifting upward and pushing the bale forward into the car. In doing so there was created a backward or outward pressure on

the running board. While doing so, the end of the running board slipped out of, or off of, the floor of the car, the board fell to the ground between the car and the platform, and the bale of cotton fell upon Irick, inflicting upon him serious bodily injuries.

The Railway Company had its station and freight depot and platform lighted with electric lights. A power line ran alongside the cotton loading platform, and such lights were readily and immediately available to the Railway Company had it desired to install them, but the cotton platform was not lighted by the Railway Company. The evidence showed that cotton was frequently loaded there at night during the cotton shipping season. The only lights available on the occasion in question were furnished by Morris, and consisted of a small flashlight placed on the floor of the platform near the car door, and a small lantern used inside the car until it was nearly loaded and then removed and placed on a cotton bale outside near the car door.

The case was submitted to a jury on special issues and they found that the Railway Company, under the facts and circumstances, was guilty of negligence in failing to have its platform lighted with electric lights; that it was guilty of negligence in furnishing the running board being used at the time Irick was injured, and that such negligence proximately caused the injuries. They also found that neither Morris nor Irick was guilty of contributory negligence. Damages were found in the sum of $12,500 and judgment rendered accordingly. No question is raised as to the extent of the plaintiff's injuries, nor as to the amount of the damages.

The Railway Company defended in the trial court and presents the same contentions here, on the grounds that under the undisputed facts it owed no duty to appellee; that he was an employee of an independent contractor; that it had no control over him; that it was under no duty to furnish lights for its platform; that Morris, the employer of appellee, undertook to do so; that both Morris and employee were fully cognizant of all dangers incident to lack of lighting; that the running board in question was an ordinary tool or appliance, without concealed defects, if any; that appellee selected it for use himself; and such defects, if any it had, were open and apparent, and therefore as well known to appellee as to the Railway Company. It also pleaded unavoidable accident.

It is clear, we think, that appellee was on appellant's premises as an invitee, being there with its full knowledge and consent and engaged in an undertaking which inured to the mutual benefit of his employer and the Railway Company. Houston Belt & T. Ry. Co. v. Rogers, Tex.Civ.App., 44 S.W.2d 420, writ dismissed; Kruse v. H. & T. C. Ry. Co., Tex.Civ.App., 253 S.W. 623, 625; 35 Tex.Jur. § 385, p. 590; Idem. § 407, p. 632. Under such circumstances it has been held that "the doctrine of assumed risk does not apply in the absence of the relationship of employer and employee." El Paso Printing Co. v. Glick, Tex.Civ.App., 246 S.W. 1076, 1079, affirmed in, Tex.Com. App., 263 S.W. 260; 30 Tex.Jur. § 29, p. 678; 20 R.C.L. § 95, p. 109.

The general rule as to invitees, deduced from the Texas cases, is stated in 35 Tex.Jur. § 389, p. 601, as follows: "Where the plaintiff is engaged in work requiring or authorizing the use by him of appliances provided by the railroad (as where he is employed by a consignee to unload freight from a car), being an invitee he is entitled to recover for an injury sustained unless he had full knowledge of the defect, or unless the defect was obvious to anyone using the track or appliance, or unless he had been specifically warned of it. In particular, he is not required to examine the appliance to see that it is fit for use, for he may rely on its being in proper condition."

That a railway company is charged with the duty of ordinary care to protect invitees using its premises or appliances against dangers or injury appears to be a rule of general application. See 35 Tex.Jur. § 391, p. 604; 52 C.J. § 2129, p. 566; 22 R. C.L. § 150, p. 904; Markley v. Kansas City S. Ry. Co., 338 Mo. 436, 90 S.W.2d 409, 411; Hanson v. Ponder, Tex.Com. App., 300 S.W. 35, 37. And where it undertakes to, and does, furnish appliances for use of those properly upon its premises and invited to use them, the duty rests upon it to use ordinary care to furnish reasonably safe appliances for such purposes; and failure to do so constitutes negligence. Houston, Belt & T. Ry. Co. v. Rogers, supra.

The general rule is well settled that where the dangers involved, and the defects, if any, in such appliances are patent, open and obvious, and as well known to the plaintiff as to the defendant, the injured party cannot recover. 30 Tex.Jur. § 184, p. 869.

In view of the facts that cotton was, during the shipping season, frequently loaded from this platform at night, that appellant had its freight depot lighted and electric lighting facilities for the lighting of the cotton platform were immediately available, we are not prepared to say that the jury were not authorized to find that in the exercise of ordinary care the Railway Company should have had this platform properly lighted. See 35 Tex.Jur. § 391, p. 604; 22 R.C.L. § 150, p. 904. While the Railway Company showed that it was not usual nor customary for any of the railway companies in the cotton shipping areas to light their open loading platforms, this was but evidentiary and not conclusive of the issue of negligence in that regard. Cameron Compress Co. v. Whitington, Tex.Com. App., 280 S.W. 527, 529; Exporters' & Traders' Compress & Warehouse Co. v. Hemphill, Tex.Civ.App., 292 S.W. 599.

But if it be conceded that the ordinary dangers incident to loading said cotton at night with insufficient lights were open and obvious, and that knowledge thereof was attributable to appellee; the record discloses, we think, that insufficient lighting was but a concurring cause, if any cause at all, of the injuries sustained by appellee. If the running board was defective, and that fact not known to appellee; and if the injuries resulted from its use by appellee, and its methods of use, and the failure to nail it down or take other precautions against its slipping out of the car door as appellant insists that appellee should have done; the accident could and would just as likely have occurred during the day time as at night. In that case insufficiency of lighting would have no bearing on the issue of negligence in furnishing the defective appliance.

Manifestly, we think, in view of the fact that appellee had never helped to load cotton on the cars before, and had never used the running boards furnished by the Railway Company for that purpose, the Railway Company was in a position to have superior knowledge to that of appellee of the defects of the particular running board. The fact that it was being so used and was kept on the platform by appellant in proximity to the car in question for that purpose, was calculated to lead invitees having occasion to use it to believe that it was adequate for, and adapted to, that purpose. On the other hand, the fact that the other running boards so furnished by the Railway Company and manufactured for that purpose, were so constructed with flanges on the sides, cupped at one end and sharp at the other so as to avoid slipping out of the car when pressure was exerted upon them, was in itself sufficient evidence to present a jury issue on the Railway Company's negligence in furnishing this extra or additional running board not so equipped and in not warning those using it of the incident dangers. The method of loading the cotton into the cars in two tiers of bales, one upon the other, if not the method of loading required by the Railway Company, was undoubtedly accomplished with its full knowledge, with the concomitant knowledge imputed to it that when the last bale required to fill the car in front of the door was loaded, it must be hoisted into the car from the running board itself, and by the exertion of a backward, or outward pressure thereon. This made it incumbent upon the Railway Company, in the exercise of ordinary care, to reasonably guard against the very contingency which resulted in appellee's injury,—that is against the probability of such board's slipping out of the car. This it had done in the case of the other running boards in use, but not as to the one causing the injury. We conclude, therefore, that under the facts and circumstances, the evidence amply supported the finding of negligence in this regard.

No good purpose would be served by discussing in detail appellant's contention that appellee, or his employer, Morris, was guilty of contributory negligence. From what has been said, and from the undisputed facts and circumstances, it was a matter for the jury to determine. The test, of course, in that, as on the issue of appellant's negligence, was what constituted ordinary care on the part of appellee. It is only where there is a violation of some statute by the injured party or where the facts are such that ordinary minds could not differ as to the consequences, that it can be said that contributory negligence exists as a matter of law. No such case is here presented. Even where an injured person has knowledge, actual or imputed, of a defect, if in the exercise of ordinary care he would not realize or anticipate the dangerous consequences, a question is still presented for jury determination. Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S.W. 227.

Appellant cites and relies on numerous cases from other jurisdictions and by the Federal Courts, for the most part holding

that no liability was shown against the defendants, either because of lack of negligence on the part of such defendant; contributory negligence on the part of the plaintiff; or where the defect or danger complained of was such as to be open and apparent, and as well known to the plaintiff as to the defendant. In the last analysis, however, these cases but present factual applications of the settled governing rules. These rules, controlling the instant case, and as applied in Texas, are stated in the authorities hereinabove cited; and nothing would be accomplished by discussing or distinguishing cases from other jurisdictions. Many of them relate to the condition of the premises on which the invitee was working. One of the cases cited in particular involved a gangplank used in unloading freight cars. Silvey v. Seaboard Air Line Ry. Co., 172 N.C. 110, 90 S.E. 4. While the court in that case did hold that the plaintiff was guilty of contributory negligence, the ratio decidendi of the case is manifest from the following language of the opinion (page 5): "The gangplank was of the kind in general use, and, according to plaintiff's own evidence, amply sufficient for unloading the car." And the further statement that "and the implement was such as is in general use, without a defect and fully sufficient for the purpose for which it was intended." From the facts above stated, it is clear that in the instant case a different situation is presented with respect to the particular gangplank here involved, in that it was different from the others in general use, particularly from those manufactured for the particular purpose, and was not itself originally designed to be so used. It had, however, been used for this purpose for several years, along with the other running boards.

We have reached the conclusion, however, that the judgment of the trial court must be reversed for refusal by the trial court to submit to the jury the issue of unavoidable accident, requested by appellant. This issue was available to appellant under a general denial, if the evidence raised it. Greer v. Thaman, Tex. Com.App., 55 S.W.2d 519. The case was vigorously contested by affirmative pleadings of both parties, and upon the trial, appellant urgently contending that it was guilty of no negligence in the premises, or if it was, that appellee was guilty of contributory negligence both as a matter of fact and as a matter of law. While it is true that the jury found, upon sufficient evidence to sustain such findings, that appellant was guilty of negligence, and that appellee was not guilty of contributory negligence; it is now settled that appellant "had the right to demand the direct submission of his defense as raised by the evidence according to the state thereof before, and not after, it was interpreted by the jury." Greer v. Thaman, supra (page 520). While, of course, a finding of negligence on the part of either party necessarily negatives the existence of unavoidable accident; the test in such case is whether the evidence tends to prove that the injury occurred without culpability on the part of either. Orange & N. W. Ry. Co. v. Harris, 127 Tex. 13, 89 S.W.2d 973. Without further summarizing the evidence here, in the light of the facts and circumstances heretofore stated, we are not prepared to say that the jury could not have reasonably found that the accident occurred without the negligence of either party. This is the test, as we understand it, of the submissibility of this issue; and it is not precluded by what the jury did find on the issues which were submitted to them. Under the holdings of the Supreme Court in the Greer and Harris Cases, supra, this refusal of the trial court constituted reversible error. The judgment must therefore be reversed and the cause remanded for another trial.

Reversed and remanded.